LOCAL 1912, INTERNATIONAL ASSO-
CIATION OF MACHINISTS,
Appellant,

v.

UNITED STATES POTASH COMPANY,
DIVISION OF UNITED STATES BO-
RAX & CHEMICAL CORPORATION,
Appellee.

No. 6021.

United States Court of Appeals
Tenth Circuit.

Sept. 2, 1959.

George W. Christensen, Washington, D. C. (A. T. Montoya, Albuquerque, N. M., on the brief), for appellant.

Rufus G. Poole, Albuquerque, N. M. (James W. Stagner, Carlsbad, N. M., and Robert C. Poole, Albuquerque, N. M., on the brief), for appellee.

Before MURRAH, Chief Judge, and PICKETT and BREITENSTEIN, Circuit Judges.

MURRAH, Chief Judge.

The appellant-Union brought this suit under Section 301(a) of the Labor Management Relations Act of 1947, 61 Stat. 156, 29 U.S.C.A. § 185, to compel arbitration of a grievance as arising out of a collective bargaining agreement with the appellee-employer. The agreement conventionally provided, in the "Management Functions Article", that "all matters related to this Company and its operations and employment with or by this Company * * * are exclusively within the jurisdiction of the Company and not subject to Union action or consent or to arbitration, except such * * * conditions of employment affecting the employer-employee relationship as are specifically provided for in the terms of this agreement * * *"; and, in the "Arbitration Article", that "only a question or questions as to the proper interpretation or application of any of the provisions of this agreement may be submitted to arbitration." The grievance arose out of the subcontracting of work by the employer on its premises which fell within the employee job classification set up in the contract.

Relying on the restrictive language of the foregoing Management Functions and Arbitration Articles of the agreement, the employer at all times refused to arbitrate the grievance on the grounds that it was not covered by any of the provisions of the bargaining contract, and therefore did not involve the interpretation or application of any such provisions, and answered accordingly. The trial court agreed with the employer, holding that the grievance was not covered by the contract and the Union was therefore not entitled to the relief sought.

Since Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 923, 1 L.Ed.2d 972, the district courts are empowered under Section 301 (a), supra, to decree specific performance of an agreement to arbitrate a grievance dispute according to federal notions of equity jurisprudence. But since arbitration is voluntary and consensual in nature, warrant therefor must be found within the terms and conditions of the bargaining agreement. Our province then is to decide the threshold question whether the employer has promised to submit the asserted grievance to arbitration as one involving "the proper interpretation or application of any of the provisions of this agreement." See Local 201, International Union of Electrical, Radio and Machine Workers, etc. v. General Electric Co., 1 Cir., 262 F.2d 265.

It has been suggested in scholarly writings that labor relations is a world of its own and that "the law should stay out"; [1] that in any event, collective bargaining contracts are uniquely different from ordinary commercial contracts, and that different canons of interpretation should be employed in the decisional process; that labor contracts, being coercively arrived at, leave ambiguities and contin-

1. See Shulman, "Reason, Contract and Law in Labor Relations", 68 Harv.L.R. 99, 1024.

gencies which require administrative interpretation for which judges, accustomed to conventional canons of construction, are "ill suited". And, we are urged to practice judicial abnegation lest our encroachments on the province of the arbitrator hinder the achievement of industrial peace through arbitration.[2]

But whatever may be said of the competence or suitability of the judiciary to properly interpret and apply the provisions of a collective bargaining contract according to its tenor and underlying purposes, the fact remains that for good or evil, the courts have been Congressionally assigned the task of determining arbitrability under the pertinent provisions of the contract. Textile Workers Union of America v. Lincoln Mills, supra. We undertake our assigned task with no lack of appreciation of the laudable functions which collective bargaining agreements are intended to serve. We know that their principal objective is the promotion of industrial peace, and that arbitration is one of the chosen means of achieving that end. We understand that because of their institutional characteristics, bargaining agreements may be less distinct in the rights they are intended to grant and the obligations they intend to impose, and that negotiators at the bargaining table often leave much to pragmatic adjustments in post-contract collective bargaining.

▮ Judicial determination of arbitrability, i. e., whether the employer has agreed to arbitrate the underlying grievance, necessarily involves a modicum of interpretation of the contract, and, to that extent overlaps the interpretive functions which primarily belong to the arbitrator. But, we do not reach the "ultimate issues of contract interpretation that determine the outcome of the controversy." Goodall-Sanford, Inc. v. United Textile Workers, 1 Cir., 233 F.2d 104, 107. We interpret only to determine whether the grievance dispute can be fairly said to present a question as to the interpretation or application of the contract. If so, the judicial function is at an end and the proper interpretation of the contract is for the arbitrator.

None of the provisions of the contract explicitly prohibit subcontracting, but that does not necessarily mean that subcontracting is excluded from the scope of the bargaining agreement. The contract is not couched in terms of specified grievances which are to be arbitrated, thereby excluding all others by implication. Nor does it specify the grievances which are not to be arbitrated, thereby including all others. See Lodge No. 12, Dist. No. 37, etc. v. Cameron Iron Works, Inc., 5 Cir., 257 F.2d 467; Annotation 24 A.L.R.2d 752. Instead, it leaves room for interpretive implications of coverage, to be derived from implied covenants of good faith and fair dealings which are the very life blood of collective bargaining agreements. Like every contract, there is a "covenant that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." 3 Williston (Rev.Ed. 1936) § 670. It would stifle the underlying purposes of the whole agreement to construe it according to its dry words. It is for us to put meat on the skeleton rather than tear the flesh from the bones. In this context, we cannot deny arbitrability unless we can say with positive assurance that the contract is not susceptible to an interpretation to cover the asserted dispute. And, while we cannot take the word of the claimant, neither may we rely wholly upon our own judgment. For, grievances do not lose their arbitrability because we think they can be correctly decided only one way. New Bedford Defense Products Division, etc. v. Local No. 1113, etc., D.C., 160 F.Supp. 103, affirmed 1 Cir., 258 F.2d 522.

▮ In determining whether the grievance presents a problem of interpretation or application, it is competent, we think, to consider interpretations placed

2. Cox "Reflections Upon Labor Arbitration." 72 Harv.L.R. 1482; Wellington "Judge Magruder and the Labor Contract." 72 Harv.L.R. 1268.

upon like contracts by arbitrators with primary responsibility for the interpretation of such contracts in the arbitral process. Reference to these decisions discloses that in a number of instances the conventional recognition clause, like ours, while not specifically excluding subcontracting, has been interpreted to forbid it on the grounds that it had the effect of destroying or injuring the union as an effective bargaining unit. And, this conclusion was reached without contradicting the restrictive management function provisions of the agreement. Electric Auto-Lite Co., 30 L.A. 449; American Cyanamid Co., 13 L.A. 562; In re Mandel Laces, Inc., 27 L.A. 440; National Tube Co., 17 L.A. 790; Carbide & Carbon Chemicals Co., 26 L.A. 74; Celanese Corp. of America, 14 L.A. 31; A. D. Juilliard Co., Inc., 21 L.A. 713. In the latter case, the question for the arbitrator was whether the recognition clause, together with clauses setting forth standards for wages and working conditions, limited the company's right to lay off covered employees and transfer their work to non-covered employees of a third party. "After thoughtful consideration," the arbitrator concluded that to allow the employer to do so "would subvert the contract and destroy the meaning of the collective bargaining relation." To be sure, there are cases holding quite to the contrary. See Amalgamated Ass'n of St. Electric Ry. and Motor Coach Emp. of America, etc. v. Greyhound Corp., 5 Cir., 231 F.2d 585, 57 A.L.R.2d 1394. And see also cases collected Annotation 57 A.L.R. 2d 1399.

■■ But, it is not for us to resolve the contrariety or to choose between the courts and the arbitrators. It is enough that the contrariety raises a question as to the proper interpretation or application of the contract—a function which belongs to the arbitrator. Without more, it is plain that the grievance dispute does not lie wholly outside the provisions of the contract, and arbitration is therefore enforceable. The case is accordingly reversed.