INDEPENDENT PETROLEUM WORK-ERS OF AMERICA, INC., Plaintiff-Appellee,

v.

AMERICAN OIL COMPANY, Defendant-Appellant.

No. 14183.

United States Court of Appeals Seventh Circuit.

Nov. 21, 1963.

Rehearing Denied Jan. 6, 1964.

Daniel F. Kelly, Richard P. Tinkham, Allen W. Teagle, Hammond, Ind., Donald L. Hastings, Chicago, Ill., for defendant-appellant, American Oil Co., Tinkham, Beckman, Kelly & Singleton, Hammond, Ind., of counsel.

William Belshaw, Whiting, Ind., for plaintiff-appellee, Green, Powers, Belshaw & Danko, Whiting, Ind., of counsel.

Before KNOCH, CASTLE and MAJOR, Circuit Judges.

MAJOR, Circuit Judge.

Plaintiff, Independent Petroleum Workers of America, Inc. (Union), brought this action under and by virtue of Section 301 of the Labor Management Relations Act of 1947 (29 U.S.C.A. § 185), to require defendant, American Oil Company (American), to submit to arbitration a grievance that American had breached the collective bargaining agreement in effect between the parties by contracting out crane work to an independent contractor. Both sides moved for summary judgment. American's motion was denied and the Union's granted. On March 13, 1963, the Court entered judgment against American and ordered it "to join with the plaintiff in the submission of the grievance described in the complaint to arbitration in accordance with the provisions of the collective bargaining agreement between the parties." From this judgment American appeals.

The collective bargaining agreement insofar as here material consists of Article I, Recognition, and Article II, Grievance Procedure. The former is the common clause by which "the Company recognizes the Union as the sole and exclusive collective bargaining agent with respect to rates of pay, wages, hours of employment, and other conditions of employment for all employees of the Company * * *." The latter provides a step-by-step procedure for the resolution of grievances. This procedure culminates in compulsory arbitration in certain areas (as stated in plaintiff's brief) and is contained in Section 9 of Article II.

Subsection A, Section 10, Paragraph 1 of the same Article provides:

"As a specific limitation on the foregoing Section 9 of this Article II, the following shall be effective:

A. Questions which may be referred to arbitration shall be limited to:

1. Questions directly involving or arising from applications, interpretations or alleged violations of the terms of this agreement."

This Paragraph is of a two-fold nature and plaintiff emphasizes in its brief that the instant case is predicated upon and involves only "alleged violations of the terms of this agreement." It states, "The parties agreed to refer to arbitration 'questions * * * arising from * * * alleged violations of the terms of this agreement.' It is under this clause, and solely under this clause, that Legal Paragraph I of the plaintiff's amended complaint was brought." [1]

Subsection A, Section 10, Paragraph 3 provides for arbitration of "Questions of applications or interpretations of or alleged noncompliance with past policies, practices, customs or usages relative to working conditions, and grievances arising from [describing situations in which the Paragraph is to be given application.]" We mention Paragraph 3 at this point only because plaintiff heretofore sought under it to compel arbitration of the same grievance. Independent Petroleum Workers of America, Inc. v. Standard Oil Co., 7 Cir., 275 F.2d 706.

Subsection D, Section 10, imposes a further limitation on arbitration:

"The Company will bargain with the Union with respect to matters relating to rates of pay, hours of employment, and other conditions of employment, which are not covered in this Agreement, ·or in any side agreement or arbitration award, but each party shall have the right to refuse to arbitrate any such matter. In the event either party does so refuse, the no-strike clause contained in Section 2 of Article XIII of this Agreement shall be suspended but solely with respect to the issue concerning which either party shall have so refused to arbitrate."

Plaintiff on brief states the contested issue:

"Is the defendant required to submit to arbitration the violation of the collective bargaining agreement alleged by plaintiff?"

Defendant on brief states this issue in different phraseology but in substance the same:

"Whether the defendant did or did not breach its agreement with the plaintiff union when it refused to submit its right to contract out work to arbitration?"

Defendant states a second contested issue:

"Does the prior adjudication of this Court of the same issue between the same parties require the denial of plaintiff's Motion for Summary Judgment and the granting of defendant's Motion for Summary Judgment?"

Much is stated in the briefs of both parties, particularly that of plaintiff, concerning three Supreme Court cases, all decided June 20, 1960, sometimes referred to as the "Steelworkers Trilogy." United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403; United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409, and United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424. We have read these cases many times and doubt if an attempt at detailed analysis would be of any benefit. The Court in American, as well as in Warrior, had before it an ar-

---

1. The complaint contained two Legal Paragraphs but plaintiff in the District Court, as well as here, relies only upon Legal Paragraph I. It was upon this Paragraph that the District Court granted the relief sought.

bitration clause "as to the meaning, interpretation and application of the provisions of this agreement." Plaintiff here, as noted, expressly disclaims reliance upon such a basis but predicates its grievance upon a question directly involving an "alleged violation of the terms of this agreement." In any event, the so-called trilogy cases have not changed the long-established principle of law that compulsory arbitration cannot be properly awarded absent a contract between the parties agreeing thereto. Plaintiff appears to so recognize. Referring to the trilogy cases, in its brief it states that they "have now likewise left little doubt as to the duty of a court in its approach to the problem of arbitration in an industrial dispute situation."

Regardless of the approach, the question for decision remains as to whether the parties have obligated themselves by contract to submit the grievance in dispute to arbitration. Plaintiff recognizes this by its statement of the contested issue, as well as at other places in its brief. At one point it states, "There is only the issue of the agreement—or non-agreement—of the parties to arbitrate." At another point it asks, "Did the parties agree to resolve by arbitration the violation of the agreement alleged by one of the parties?"

As noted, plaintiff's claim for relief is based entirely upon the "alleged violations of the terms of this agreement." The question immediately arises —what terms? We find no answer in plaintiff's brief. However, in its complaint it alleged that defendant "violated said agreement in that it failed to treat the plaintiff as the sole and exclusive collective bargaining agent as required thereby." This alleged violation refers to the recognition clause which provides, "The Company recognizes the Union as the sole and exclusive collective bargaining agent with respect to rates of pay, wages, hours of employment, and other conditions of employment." Certainly both defendant and plaintiff, having entered into the contract, were obligated to bargain in good faith, an obligation imposed by the National Labor Relations Act, 29 U.S.C.A. § 158.

The recognition clause makes no reference either to arbitration or to the contracting out of work. More than that, the complaint, referring to Article II, alleged, "The plaintiff advanced the said grievance in accordance with the procedure established by said agreement, including the making of a request to defendant for submission of the alleged violation to arbitration," and that the defendant refused to submit the said grievance to arbitration. The grievance procedure specifically provides for bargaining between the parties concerning any grievance in dispute. Section 9 of such procedure commences, "If the question is not settled as a result of negotiations[2] between the manager, or those designated by him, and the Union * * *." Then follow the provisions pertaining to arbitration which only when complied with make the question "eligible for referral to arbitration for settlement." Thus, the grievance procedure, including those provisions for bargaining on the question in dispute, must be followed step by step as a prerequisite to the right of either party to require arbitration. Plaintiff's allegation that the grievance procedure was followed is a clear admission that the parties had bargained without success concerning the issue in dispute.

Plaintiff in its brief states, "This provision [referring to Section 10, Subsection A, Paragraph 1] of the grievance procedure simply states that a grievance matter which comes into existence because of the allegation of either party that the agreement has been violated is such a question as the parties have contractually bound themselves to arbitrate." In other words, it is plaintiff's position that the mere allegation that the agreement has been violated, ipso facto, entitles it to arbitration. This position, if accepted, means that either party by

---

2. The words "negotiations" and "bargaining" are used interchangeably in outlining the grievance procedure.

alleging a refusal of the other to bargain with respect to any conceivable issue or controversy would become subject to arbitration.

Plaintiff's position is devoid of all logic. It is without merit and we so hold. Particularly is this so under the facts of the case where the complaint clearly demonstrates that the parties did bargain on the grievance in dispute.

There are other facets of the case which fortify the conclusion just stated. Subsection D of Section 10 (heretofore quoted) is a further limitation upon the arbitration provision of Section 9. Subsection D provides that the Company will bargain with the Union regarding matters not covered in the collective bargaining agreement but either party may refuse to arbitrate any such matter. Defendant contends the provision excludes from arbitration the contracting out of work because it is not covered in the agreement. Plaintiff makes no response to this contention. While we think there is plausibility in defendant's contention, we need not resolve it. The section is significant because the parties agreed that certain disputes were not subject to compulsory arbitration, which destroys plaintiff's theory that the mere allegation of contract violation requires arbitration.

The bargaining history between plaintiff and defendant relative to the right of the latter to contract out work is much discussed in the briefs. Plaintiff urges that such history is irrelevant. We think, however, it has some significance and may properly be considered. United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (concurring opinion, page 569 of 363 U.S., page 1347 of 80 S.Ct., 4 L.Ed.2d 1403). Pacific Northwest Bell Telephone Co. v. Communications Workers of America, 9 Cir., 310 F.2d 244, 247. This bargaining history is set forth in our previous decision. 275 F.2d 706, 708. In brief, it shows

that plaintiff for many years had sought the inclusion of a clause in the collective bargaining agreement specifically prohibiting or limiting the right of the defendant to contract out work. On each occasion the proposal was rejected. This bargaining history while of course not controlling fortifies the conclusion which we have reached that plaintiff's claim is without merit.

This brings us to the issue as to whether plaintiff is barred from pursuing the instant action by reason of the prior decision of this Court. 275 F.2d 706. Defendant contends that it is, under both the doctrines of stare decisis and collateral estoppel. Plaintiff devotes most of its argument to the former and asserts, "If the defendant fails with stare decisis, it fails equally with 'prior adjudication.'" We think this is an erroneous statement but find it unnecessary to distinguish the two doctrines because we reach the conclusion that plaintiff is barred by collateral estoppel.

Plaintiff's sole argument in opposing the application of this doctrine is that "the cause of action is different," which presents the nib of the matter. In considering this issue, we have carefully examined the briefs, pleadings and opinion of this Court filed in the former case, as well as the briefs and pleadings before us in the instant case. The two cases involve the same parties [3], with the same attorneys. The collective bargaining agreement in each case, including the provision for arbitration with the limitations thereon, is the same. The contested issue in both cases, as stated in plaintiff's briefs, was whether the defendant agreed to arbitrate its right to contract out work. Plaintiff's prayer for relief in the former case was:

> "Wherefore, the plaintiff prays for judgment, and for an order enforcing the subject collective bargaining agreement as to arbitration, and for an order of this court requir-

---

3. The contract in suit was entered into with Standard Oil Company, the named defendant in the prior suit. American, the named defendant in the instant suit, is the successor to Standard.

ing the defendant to join in the submission of the involved issues to arbitration, as required by said subject agreement * * *."

Its prayer for relief in the instant case is exactly the same. It is true, as plaintiff points out and as the opinion of this Court discloses, plaintiff in the former case relied upon Paragraph 3, Subsection A, Section 10, in support of its contention that defendant was required by the terms of the agreement to arbitrate the question in dispute, while in the instant case it relies upon Paragraph 1 of the same section and subsection. The point is, however, that plaintiff might have relied upon Paragraph 1 in the previous suit but failed to do so. Its failure in this respect was not explained in its brief; neither was it explained by plaintiff's counsel during oral argument when given an opportunity to do so.

We think the conclusion inescapable that plaintiff in both cases has presented the same claim or demand, that is, that defendant be required to arbitrate the dispute in question. The only difference is that in the present case it offers in support of its claim a different reason from that relied upon in the previous case.

The cases which have dealt with the issue generally refer to and cite Cromwell v. County of Sac, 94 U.S. 351, 24 L.Ed. 195. In that case the Court discusses the difference between the effect of a judgment as a bar or estoppel to the prosecution of a second action upon the same claim or demand, and its effect as an estoppel in another action between the same parties upon a different cause of action. The Court stated (page 352, of 94 U.S., 24 L.Ed. 195):

"In the former case, the judgment, if rendered upon the merits, constitutes an absolute bar to a subsequent action. It is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, *but as to any other admissible matter which might have been offered for that purpose.*" (Italics supplied.)

In Grubb v. Public Utilities Commission of Ohio et al., 281 U.S. 470, 478, 50 S.Ct. 374, 378, 74 L.Ed. 972, the Court stated:

"The thing presented for adjudication in the case in the state court was the validity of the order, and it was incumbent on the appellant to present in support of his asserted right of attack every available ground of which he had knowledge. He was not at liberty to prosecute that right by piecemeal, as by presenting a part only of the available grounds and reserving others for another suit, if failing in that."

In Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898, the Court stated:

"The rule provides that when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound 'not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.' Cromwell v. County of Sac, 94 U.S. 351, 352 [24 L.Ed. 195]. The judgment puts an end to the cause of action, which cannot again be brought into litigation between the parties upon any ground whatever, absent fraud or some other factor invalidating the judgment."

There are many other cases to the same effect. See Tait v. Western Maryland Ry. Co., 289 U.S. 620, 623, 53 S.Ct. 706, 77 L.Ed. 1405; United States v. International Building Co., 345 U.S. 502, 504, 73 S.Ct. 807, 97 L.Ed. 1182; Lynch v. Commissioner of Internal Revenue, 7 Cir., 216 F.2d 574, 579, and First National Bank in Wichita v. Luther, 10 Cir., 217 F.2d 262, 265. Sometimes the doctrine

is referred to as res judicata, as it was in Luther, wherein the Court stated:

"It is the general rule that where a second suit between the same parties, or their privies, is on the same cause of action, the final judgment in the prior action is conclusive as to all matters which were actually litigated and as to every issue, claim, or defense which might have been presented * * *."

Plaintiff, so far as we are aware, did not petition the Supreme Court for certiorari in the case previously before this Court. In this connection, a statement in Brownell v. Chase National Bank, 352 U.S. 36, 77 S.Ct. 116, 1 L.Ed.2d 99, appears pertinent. The Court stated (page 39 of 352 U.S., pages 117–118 of 77 S.Ct., 1 L.Ed.2d 99):

"Under familiar principles of res judicata, the claim so tendered may not be relitigated. Cromwell v. County of Sac, 94 U.S. 351, 352 [24 L.Ed. 195]; Tait v. Western Maryland R. Co., 289 U.S. 620, 623 [53 S.Ct. 706, 77 L.Ed. 1405]. If he was not content with the first ruling, his remedy was by certiorari to this Court. Angel v. Bullington, 330 U. S. 183, 189 [67 S.Ct. 657, 91 L.Ed. 832]. Having failed to seek and obtain that review, he is barred from relitigating the issues tendered in the first suit."

Absent the application of the doctrine of collateral estoppel, we have before us a situation in which plaintiff relied yesterday upon one provision of the collective bargaining agreement in support of its claim or demand that defendant be required to submit to compulsory arbitration; today it relies upon a different provision of the same agreement in support of the same claim or demand, and tomorrow it will be at liberty to rely upon still another provision of the same agreement in support of the same claim or demand. It is our judgment that the doctrine should be applied and given effect.

Thus, we hold (1) that defendant was not obligated by the terms of the agreement to submit the grievance in dispute to arbitration, and (2) even if defendant were so obligated that plaintiff is barred from the maintenance of its present action.

The judgment is reversed and the cause remanded, with directions that plaintiff's motion for summary judgment be denied and defendant's motion allowed.