**HUMBLE OIL & REFINING COMPANY, Appellant,**

v.

**INDEPENDENT INDUSTRIAL WORKERS' UNION, Appellee.**

No. 20917.

United States Court of Appeals
Fifth Circuit.

Sept. 9, 1964.

Rehearing Denied Dec. 21, 1964.

---

John M. Carville, Wilson B. Holcombe, Baton Rouge, La., for defendant-appellant.

George W. Liskow, Lake Charles, La., for appellee.

Before RIVES and JONES, Circuit Judges, and BOOTLE, District Judge.

RIVES, Circuit Judge.

The Union (Plaintiff, Appellee) brought this action under Section 301 of the Labor-Management Relations Act, 29 U.S.C.A. § 185, to require Humble (Defendant, Appellant) to submit a grievance to arbitration. The district court ordered Humble to arbitrate.[1]

■ The question for decision is whether the contract between Humble and the Union obligates Humble to submit the grievance to arbitration.[2] The contract contains an unequivocal no-strike clause. Article 215, Work Stoppages, provides, "There shall be no lock-outs or strikes." Humble's agreement to arbitrate must be construed as the "quid pro quo" for the Union's agreement not to strike, and an order to arbitrate should not be denied "unless it may be said with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the asserted dispute." Textile Workers Union of America v. Lincoln Mills, 1957, 353 U.S. 448, 77 S.Ct. 912, 923, 1 L.Ed.2d 972; see also United Steelworkers of America v. Warrior &

---

1. Its opinion is reported at 219 F.Supp. 546.

2. Atkinson v. Sinclair Refining Co., 1962, 370 U.S. 238, 241, 82 S.Ct. 1318, 8 L.Ed.

2d 462; United Steelworkers of America v. Warrior & Gulf Navigation Co., 1960, 363 U.S. 574, 582, 80 S.Ct. 1347.

Gulf Navigation Co., 1960, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409.

The arbitration clause reads as follows:

"251. *What Grievances Are Arbitrable*

"An arbitrable grievance is a good faith claim by one party that the other party has violated a written provision of this agreement. If the claim is disputed, the issue is either:

"(1) The interpretation of the provision, or

"(2) The facts, or both."

Article 231 of the contract provides:

"231. *Grievance Defined*

"A grievance is the situation which exists when an employee, a group of employees, or the Union feels injured, treated unfairly, or aggrieved because of the position taken by the Company (or the Company feels aggrieved because of the position taken by the Union) in regard to a matter concerning wages, hours, or working conditions."

Article 234 provides:

"234. *Employee And Union Grievance*

"(a) When an employee, or the Union, has a grievance, it shall be handled in this way:

\*  \*  \*  \*  \*  \*

"(5) *Fifth Step*

"If the Manager or Employee Relations does not arrange such a conference within ten days after the request is presented, or if the General Manager does not satisfy the grievance within ten days after the conference ends, *the Union may, if the grievance is arbitrable, proceed to arbitration under Article 250.*" (Emphasis supplied.)

█ The grievance is described in the stipulation of facts as follows:

"6.

"During the period of the contract, specifically prior to July 2, 1962, the defendant called in for interrogation an employee named McDanell on investigation of an incident in the plant at which time the Union requested the right to be present because the investigation might result in discipline of the party being interrogated.

"7.

"The Company declined to permit a Union representative to be present to which exception was taken by the Union as a violation of the contract between the parties.

"8.

"The Union gave the defendant notice by letter dated August 10, 1962, of the Union's desire to arbitrate the grievance.

"9.

"By letter dated August 24, 1962, defendant declined to arbitrate the grievance as shown in said letter.

"10.

"The interrogation at which the Union representative was denied the right to be present was instituted by the Company to gather facts concerning a possible misdeed by one of the employees interrogated. The investigation was completed before the Company made its decisions as to what discipline, if any, to impose. The Company refused to permit the Union representative access to the interviews \* \* \*."

Under the contract not every grievance (Article 231, supra) is arbitrable, but only a grievance which amounts to "a good faith claim by one party that the other party has violated a written provision of this agreement." (Article 251.) Then, "if the claim is disputed, the issue is either: (1) The interpretation of the provision, or (2) The facts, or both."

The Union's letter demanding arbitration asserts that Humble's refusal to permit a representative to be present at the investigation "is a violation of the certification and is further a violation of Sections 211, 234 and other provisions

of the contract." Section 234 has been quoted. Section 211 reads as follows:

"**211.** *Recognition of Union Functions*

"The Company recognizes the Union as the exclusive representative of all employees covered by this agreement for the purpose of collective bargaining with respect to rates of pay, wages, hours of employment, and other conditions of employment."

Section 211 must be construed in connection with its counterpart, which reads as follows:

"**212.** *Recognition of Management Functions*

"(a) The Union recognizes that the Company has the right, on its own initiative, to perform any function of management at any time, so long as it does not violate any express provision of this agreement.

"(b) The following acts are functions of management.

"(1) Those acts which are not within the area of collective bargaining as required by the National Labor Relations Act, and

"(2) Those acts which are usually exercised by employers, and

"(3) Those acts which management should exercise in order to properly manage the business."

The district court found:

"There is no showing whatever of bad faith on the part of the Union. The language of Sections 211 and 231 particularly of the collective bargaining agreement, especially where they refer to 'other conditions of employment' and 'working conditions' is sufficiently broad to be susceptible of varying interpretations. There is, therefore, a good faith claim by one party, the Union, that the other party, the Company, has violated a written provision of the agreement. Therefore, under the clear provisions of the agreement, arbitration should be ordered, and such arbitration should be held in accordance with Sections 250 through 257 of the collective bargaining agreement pertaining specifically to arbitration procedure."

We agree with the learned district judge. The case most heavily relied upon by Humble is Independent Petroleum Workers of America v. American Oil Co., 7 Cir. 1963, 324 F.2d 903. That case is readily distinguishable on a number of grounds. First and foremost, the contract there involved did not contain an unequivocal no-strike provision as here, but the no-strike clause was specifically suspendable on a refusal to arbitrate. Second, in that case arbitrable grievances related to "Questions directly involving or arising from applications, interpretations or alleged violations of the terms of this agreement." 324 F.2d at 905. That is much narrower than "a good faith claim by one party that the other party has violated a written provision of this agreement." (Article 251, quoted supra.) The word "alleged" in the Petroleum Workers case modified only "violations," while under Article 251 of the present contract the "good faith claim" might relate to the interpretation of the written provision of the contract. There are other differences. It would unduly prolong this opinion to distinguish the other cases relied on by Humble.

Humble insists that if the Union's claim is established, it would constitute an unfair labor practice of refusal to bargain over which the National Labor Relations Board has exclusive jurisdiction. If true, that is no answer to the Union's good faith claim that Humble's conduct also constitutes a violation of a written provision of the collective bargaining agreement. Lodge No. 12, Dist. No. 37, International Association of Machinists v. Cameron Iron Works, 5 Cir. 1958, 257 F.2d 467. The contract obligates Humble to submit the grievance to arbitration, and the judgment is

Affirmed.