United States Court of Appeals,

Fifth Circuit.

No. 91–6212.

OIL, CHEMICAL & ATOMIC WORKERS INTERNATIONAL UNION and its LOCAL 4–227, AFL–CIO, Plaintiffs–Appellees,

v.

PHILLIPS 66 COMPANY, Defendant–Appellant.

Nov. 4, 1992.

Appeal from the United States District Court for the Southern District of Texas.

Before REYNALDO G. GARZA, DAVIS and BARKSDALE, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:

Phillips 66 Company ("Phillips") appeals from an order of the district court compelling it to arbitrate a grievance filed by the Oil, Chemical & Atomic Workers International Union ("Union"), which alleged that Phillips' substance control policy violated the parties' collective bargaining agreement. Our decision today is controlled by *United Steelworkers of Am. v. Asarco, Inc.,* 970 F.2d 1448 (5th Cir.1992), which held drug policy grievances arbitrable if such grievances emanate from a contract subject to arbitration. *See id.* at 1451. Therefore, because the union's grievances allege violations of the parties' collective bargaining agreement, which is subject to arbitration, we affirm the district court's judgment for the union.

## I. FACTS AND PROCEDURAL HISTORY

Phillips has maintained a collective bargaining relationship with the union for forty years. The current collective bargaining agreement ("CBA")[1] between the parties is for the period February 1, 1990 to January 31, 1993. Article VI of the CBA provides a detailed grievance-dispute procedure, which is expressly applicable to application and interpretation of the working agreement. Section 5(a)(5) empowers an arbitrator to "interpret the existing provisions of this Agreement and apply them to the specific facts of the grievance or dispute."

---

[1]The CBA is also referred to as the "working agreement."

In 1987, Phillips began the groundwork for instituting a new drug control policy, which would allow it to test employees for drug and alcohol abuse. Phillips and the union negotiated on numerous occasions between March 27, 1990 and May 22, 1990. Although the parties eventually agreed on some aspects of the policy, the bargaining reached an impasse. Phillips informed the union of its "best and final offer," and then unilaterally implemented the new drug policy on June 1, 1990, despite the union's dissatisfaction with many provisions.

Four days later, on June 5, the union filed a grievance based upon the drug policy pursuant to Article VI of the CBA. The grievance alleged three violations of the working agreement: (i) Article VI, which prohibits discharges without just cause; (ii) Article XV, which deals with health and safety; and (iii) the Recognition Clause. On June 12, the union filed a request for arbitration. In response, Phillips notified the union that it would not submit to arbitration because the grievance was beyond the ambit of the arbitration clause.

The union then commenced this suit in district court seeking to compel arbitration under Section 301 of the Labor Management Relations Act. 29 U.S.C. § 185. Both parties moved for summary judgment. The district court noted the presumption of arbitrability[2] and focused on the union's grievance, which alleged that the drug testing policy violated the recognition clause, just cause clause, and health and safety clauses. Guided by *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 581–82, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960) the district court reasoned that a grievance is arbitrable unless: (i) it is expressly excluded in the contract; or (ii) there is forceful evidence of an intent to exclude the claim from arbitration. *See Phillips,* 776 F.Supp. at 1190. Judge Lake noted no express exclusion, and also found that Phillips had not shown that they intended to exclude these grievances from arbitration. *See id.* Accordingly, the district court granted the union's motion for summary judgment compelling arbitration. Phillips appeals.

## II. DISCUSSION

When faced with questions of arbitrability, this Court need only decide whether the grievance

---

[2] *See Oil, Chem. & Atomic Workers Int'l v. Phillips 66 Co.,* 776 F.Supp. 1189, 1190 (S.D.Tex.1991).

before it is subject to arbitration. *See, e.g., United Steelworkers of Am. v. American Mfg. Co.,* 363 U.S. 564, 567–68, 80 S.Ct. 1343, 1346–47, 4 L.Ed.2d 1403 (1960). In the current context this reduces to the question: are the disputes emanating from Phillips' drug policy arbitrable?

In *Asarco,* this court was faced with an identical situation. The company and the union were collectively bargaining both the working agreement and the drug and alcohol testing policy.[3] Although the company and the union were able to agree on a CBA, they were unable to come up with a mutually acceptable drug policy. The company and the union bargained until impasse on the drug policy. *Asarco,* at 1449–50. Following the impasse, the company unilaterally enacted a drug and alcohol testing policy. *Id.*

The *Asarco* court held that any claim that alleges a violation of the working agreement triggers arbitration, provided that the agreement itself has an arbitration clause. *See id.* at 1451. Furthermore, once it determines that claims under the working agreement have been alleged "[it] may go no further [ ] an order compelling arbitration is required." *Id.*

Phillips' actions in this case cannot be distinguished from those of *Asarco* and, therefore, our decision is mandated by the "prior panel rule." *See, e.g., Tagle v. Regan,* 643 F.2d 1058, 1064 (5th Cir. Unit B Apr. 1981) ("[i]t is not the usual practice in this circuit for one panel to reexamine the opinion of an earlier panel"). While we are mindful of Judge Weiner's forceful dissent in *Asarco,* we are constrained to countenance the so called "double dipping"[4] that has occurred in this case.

Therefore, we AFFIRM the judgment of the district court.

---

[3]While Phillips and the union had a working agreement in place during their negotiations over the drug policy, this difference does not change arbitrability analysis.

[4]In *Asarco,* Judge Weiner explained: "the Unions' efforts to use grievance-based arbitration to attack collaterally the extra-contractual Policy, which by impasse the Unions had failed to get included in the CBA's, amounts to "double dipping.' " *See Asarco,* at 1453–54 (Wiener, J., dissenting).