# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 06-2335

INTERNATIONAL BROTHERHOOD
OF ELECTRICAL WORKERS, LOCAL 21,

*Plaintiff-Appellee,*

*v.*

ILLINOIS BELL TELEPHONE COMPANY,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 06 C 705—**George W. Lindberg**, *Judge.*

ARGUED NOVEMBER 8, 2006—DECIDED JULY 2, 2007

Before CUDAHY, KANNE, and SYKES, *Circuit Judges.*

KANNE, *Circuit Judge.* After Illinois Bell Telephone Company ("Company") refused to arbitrate a grievance, the International Brotherhood of Electrical Workers, Local 21 ("Union") filed a motion to compel arbitration in federal district court. Under the terms of the parties' collective bargaining agreement ("CBA"), the district court found the grievance arbitrable and granted the motion. We affirm.

## I. BACKGROUND

The parties' CBA has been in effect since June 27, 2004. In late 2005, the Company informed the Union that it planned to implement new "consumer performance management guidelines." In the past, employees were evaluated on a "work flow" system. Essentially, employees were required to perform specific tasks in response to actions taken by the customers with whom they dealt. The new guidelines would replace the work flow system with a sales evaluation system, wherein employees would be evaluated based on actual sales made. If an employee should fail to meet his sales requirements, he could be disciplined and eventually fired.

Upon notice of the Company's plans, the Union filed a grievance challenging the implementation of the guidelines. The parties engaged in a series of discussions regarding the guidelines, and the Company made some changes to the program. In the end, however, the parties could not resolve their dispute. The Union requested that the grievance be submitted to arbitration, but the Company refused, asserting that the grievance was not arbitrable under the terms of the CBA. The Union then filed its motion to compel arbitration in federal court pursuant to the Federal Arbitration Act, 9 U.S.C. § 4.

The arbitration clause, § 13.16 of the CBA, defines what topics are arbitrable:

> The right to invoke arbitration shall extend only to matters which involve:
>
> > (A) The interpretation or application of any of the terms or provisions of this Agreement, unless excluded by specific provisions of this Agreement.
> >
> > (B) The discipline of an employee with six (6) or more months of Net Credited Service.

To invoke the arbitration clause, the Union points to several provisions of the CBA, the interpretation or application of which may be involved in this dispute. First, the recognition clause, § 1.01 of the CBA, states: "The Company recognizes the Union as the exclusive bargaining agent for [the] employees of the Company . . . ." Second, § 4.01 requires "mutual responsibility and respect" and a fair application of the CBA "in accord with its intent and meaning and consistent with the Union's status as exclusive bargaining representative." Third, the CBA includes a "no strike" provision, strictly prohibiting the Union from striking under any circumstance. None of the above provisions have been explicitly excluded from arbitration, and nothing in the CBA specifically pertains to the implementation of performance guidelines.

## II. ANALYSIS

"We review the district court's ruling to compel arbitration de novo." *American United Logistics, Inc. v. Catellus Dev. Corp.*, 319 F.3d 921, 929 (7th Cir. 2003) (citing *Harter v. Iowa Grain Co.*, 220 F.3d 544, 549-50 (7th Cir. 2000)). "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)); *Int'l Med. Group, Inc. v. Am. Arbitration Ass'n, Inc.*, 312 F.3d 833, 842 (7th Cir. 2002). The arbitrator derives his authority to resolve the parties' dispute from their agreement to allow him to do so. *Int'l Med. Group, Inc.*, 312 F.3d at 842. Unless the parties clearly provide otherwise, the question of arbitrability is properly decided by a court, not the arbitrator. *Id.*

When resolving arbitrability disputes, a court must bear in mind the liberal federal policy in favor of arbitra-

tion agreements. *James v. McDonald's Corp.*, 417 F.3d 672, 676-77 (7th Cir. 2005); *see* 9 U.S.C. §§ 2, 3. "[W]here the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" *AT&T Techs.*, 475 U.S. at 650 (quoting *Warrior & Gulf*, 363 U.S. at 582-83); *see Continental Cas. Co. v. American Nat. Ins. Co.*, 417 F.3d 727, 730-31 (7th Cir. 2005).

When determining whether the parties have agreed to arbitration, a court must be careful not to consider the merits of the underlying claim. *AT&T Techs.*, 475 U.S. at 650. If the dispute falls within the scope of the parties' arbitration agreement, even a seemingly frivolous claim must be submitted to arbitration. *Id.*; *see Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 466 F.3d 577, 581 (7th Cir. 2006). However, the arbitrator's jurisdiction remains limited by the terms of the CBA. *Am. Postal Workers Union, AFL-CIO, Milwaukee Local v. Runyon*, 185 F.3d 832, 835 (7th Cir. 1999). Thus, under the terms of § 13.16(A) of the CBA, an arbitrator's authority is limited to resolving disputes that involve the interpretation or application of a term of the CBA.

The parties have spent much time debating whether the arbitration clause in the CBA is "broad" or "narrow." While the utility of such categorization, without context, is dubious at best, the clause does appear to be in line with those that have been considered "broad." *See AT&T Techs.*, 475 U.S. at 650 (finding arbitration clause broad where applied to "differences arising with respect to the interpretation of this contract or the performance of any obligation hereunder"); *Int'l Union of Operating Eng'rs,*

*Local Union 103 v. Indiana Constr. Corp.*, 13 F.3d 253, 254, 257 (7th Cir. 1994) (finding arbitration clause broad where applied to "any dispute . . . concerning the interpretation or application of the terms of this contract," plus a specific exclusion for jurisdictional disputes); *Certified Grocers of Illinois, Inc. v. Produce, Fresh & Frozen Fruits & Vegetables, Fish, Butter, Eggs, Cheese, Poultry, Florist, Nursery, Landscape & Allied Employees, Drivers, Chauffeurs, Warehousemen & Helpers Union, Chicago and Vicinity, Illinois, Local 703*, 816 F.2d 329, 329-30 (7th Cir. 1987) (finding arbitration clause broad where applied to "any difference . . . between the Employer and the Union concerning any interpretation or application of any of the provisions of this Agreement").

In order to determine whether the parties have agreed to submit this particular dispute to arbitration, we must turn to the specific language of the arbitration clause. When interpreting a contract, we look first to the plain meaning of the provision, and strive to avoid absurd results. *See County of McHenry v. Ins. Co. of the West*, 438 F.3d 813, 822 (7th Cir. 2006). On its face, the arbitration clause in this case applies to any dispute that would require the adjudicator to interpret or apply any term or provision of the CBA, so long as another provision of the CBA does not specifically exclude that topic from arbitration.

The district court based its finding of arbitrability upon § 4.01, the mutual respect and responsibility clause. The Union has also argued that this dispute involves the interpretation and application of the recognition clause, § 1.01, and thus requires the Company to submit the dispute to arbitration. We prefer to begin our analysis with the recognition clause.

An arbitrator could interpret the recognition clause, which obligates the Company to recognize the Union as the

employees' sole bargaining representative, to require only that the Company refrain from dealing with other labor organizations. Alternatively, an arbitrator could interpret the recognition clause to prohibit the Company from making significant changes in the terms and conditions of employment without the consent of the Union. The recognition clause is susceptible to any number of interpretations that may impose duties of notice and negotiation upon the Company. The point is that such interpretation is the province of the arbitrator—not of this court. So long as the recognition clause is susceptible to an interpretation wherein the Company's actions have breached its duties, and the recognition clause is encompassed by the arbitration provision, we must compel arbitration. *See AT&T Techs.*, 475 U.S. at 650 (citing *Warrior & Gulf*, 363 U.S. at 582-83).

The Company has argued that the recognition clause cannot support arbitrability, and points to this court's 1963 opinion in *Indep. Petroleum Workers of Am., Inc. v. American Oil Co.*, in support. 324 F.2d 903 (7th Cir. 1963), *aff'd mem. by an equally divided Court*, 379 U.S. 130 (1964). *Independent Petroleum Workers* involved a labor dispute that arose when a company subcontracted work that was formerly performed by union workers. *Id.* at 904. The Union attempted to support arbitrability with the recognition clause, where the arbitration clause provided for mandatory arbitration of "[q]uestions directly involving or arising from applications, interpretations or alleged violations of the terms of this agreement." *Id.* at 905.

In response to the union's argument in *Indep. Petroleum Workers*, this court stated: "This position, if accepted, means that either party by alleging a refusal of the other to bargain with respect to any conceivable issue or controversy would become subject to arbitration. Plaintiff's position is devoid of logic." *Id.* at 906-07. The circum-

stances of the *Indep. Petroleum Workers* case, however, were very different than the case at hand. First, the union in that case "for many years had sought the inclusion of a clause in the collective bargaining agreement specifically prohibiting or limiting" the right at issue. *Id.* at 907. Thus, the issue of subcontracting had already been negotiated during the regular course of labor-management bargaining. This court found that point both relevant and significant. *Id.*

Second, the CBA in *Indep. Petroleum Workers* contained a rather unique provision which suspended the no-strike clause when the company refused to arbitrate a grievance. *Id.* at 905. Arbitration provisions are generally considered reciprocity for no-strike provisions. *Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of Am., Local Union No. 371 v. Logistics Support Group*, 999 F.2d 227, 230-31 (7th Cir. 1993). A recognition clause very well might take on a different meaning in a CBA that contains a strict no-strike provision, because a refusal of the company to arbitrate would otherwise leave the union without options. If the Company can unilaterally change the conditions of employment, refuse to arbitrate, and still prohibit the Union from striking, then the purposes of the recognition clause and the Union itself are significantly undermined. This makes the case before us readily distinguishable from *Indep. Petroleum Workers.*

Finally, our decision in *Indep. Petroleum Workers* was not based solely on the merits. We also held that, because the union had already attempted to compel arbitration of the same issue in a previous suit, collateral estoppel precluded relitigation of the issue. 324 F.2d at 909. Thus, a determination on the merits was not essential to the disposition of the case.

*Indep. Petroleum Workers* predates the Supreme Court's opinion in *AT&T Techs.,* which reaffirmed the strong

presumption in favor of arbitration set forth in the *Steelworkers* Trilogy. 475 U.S. 643 (1986); *see United Steelworkers of Am. v. American Mfg. Co.*, 363 U.S. 564 (1960); *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.* 363 U.S. 574 (1960); *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593 (1960). Supreme Court precedent constrains a broad reading of *Indep. Petroleum Workers*, which centered around parties with a unique bargaining history and CBA. *See Mobil Oil Corp. v. Local 8-766, Oil, Chemical & Atomic Workers Int'l Union*, 600 F.2d 322, 328-29 (1st Cir. 1979) ("The court's reasoning on the first issue, even if treated as more than dicta to its collateral estoppel holding, is not pertinent to this case. The arbitration clause in the instant dispute does not involve a voluntary arbitration provision . . . ."); *Humble Oil & Refining Co. v. Indep. Indus. Workers' Union*, 337 F.2d 321, 324 (5th Cir. 1964). Indeed, a number of our sister circuits have found that allegations that a CBA's recognition clause has been violated can validly support arbitrability. *E.g. Oil, Chemical & Atomic Workers Int'l Union v. Phillips 66 Co.*, 976 F.2d 277, 278-79 (5th Cir. 1992); *E.M. Diagnostic Sys., Inc. v. Local 169, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of Am.*, 812 F.2d 91, 96 (3d Cir. 1987); *Local 1912, Int'l Ass'n of Machinists v. United States Potash Co.*, 270 F.2d 496, 499 (10th Cir. 1959).

While an equally divided Supreme Court affirmed *Indep. Petroleum Workers* without discussion, the Supreme Court has instructed that "summary affirmances have considerably less precedential value than an opinion on the merits," and such value "can extend no farther than the precise issues presented and necessarily decided by those actions." *Illinois State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 180, 182 (1979); *see also Boggs v. Boggs*, 520 U.S. 833, 849 (1997); *Washington v. Confederated Bands and Tribes of Yakima Indian Nation*,

439 U.S. 463, 478 n.20 (1979). From the Supreme Court's equally divided summary affirmance in *Indep. Petroleum Workers*, we can infer no comment on its approval or disapproval of the use of recognition clauses to support arbitrability.

Given the significant differences between the CBA and bargaining history in this case and that in *Indep. Petroleum Workers*, we conclude that *Indep. Petroleum Workers* is not controlling in this case. Additionally, the Supreme Court's summary affirmance sheds no light on the viability of the Union's arguments because the decision may very well have rested upon the collateral estoppel holding.

The Union in this case alleges that the Company's actions constitute a breach of the recognition clause of the CBA, § 1.01. Up until the proposed implementation of the new performance guidelines, employees were evaluated based upon the tasks they performed. If they performed the tasks that the Company told them to at the appropriate times, they received a favorable evaluation and no discipline resulted. The proposed guidelines would require the employees to deliver results. If the employees do not meet their sales quotas, they will be disciplined and possibly discharged. At the time that the current CBA was bargained over, the Union had no indication that such a change was on the horizon. Attempts at bargaining between the Company and the Union prior to implementation of the guidelines reached impasse, and the Union has alleged that this bargaining was not in good faith. Without the ability to strike or compel arbitration, the Union has no recourse.

We cannot say with positive assurance that the arbitration clause is not susceptible of an interpretation wherein a good faith allegation that the recognition clause of the CBA has been violated binds the Company to mandatory

arbitration. *See AT&T Techs.*, 475 U.S. at 650. The parties could have exempted the recognition clause from arbitration, but chose not to. The Union has alleged that the Company did not bargain in good faith prior to implementation of the guidelines and has submitted employee statements alleging that unilateral implementation of the performance guidelines threatens the continued relationship between the parties. R. 14-4. Given the presumption in favor of arbitrability, the Union has met its burden. We hold that the recognition clause is an adequate basis for arbitration in this case, and therefore need not address the Union's other arguments.

## III. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.

SYKES, *Circuit Judge,* dissenting. I respectfully dissent. The presence of an arbitration clause in a contract creates a presumption in favor of arbitration, but this means only that doubts about whether a particular dispute is covered are resolved in favor of coverage; "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960); *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648-50 (1986); *Int'l Ass'n of Machinists & Aerospace*

*Workers, Progressive Lodge No. 1000 v. Gen. Elec. Co.,* 865 F.2d 902, 904 (7th Cir. 1989). The presumption of arbitrability is overcome when "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Warrior & Gulf Navigation Co.*, 363 U.S. at 582-83; *AT&T Techs.,* 475 U.S. at 650.

The arbitration clause in the parties' collective bargaining agreement ("CBA") provides: "The right to invoke arbitration shall extend *only* to matters which involve: (A) The interpretation or application of any of the terms or provisions of this Agreement, unless excluded by specific provisions of this Agreement. (B) The discipline of an employee with six (6) or more months of Net Credited Service." (Emphasis added.) The use of the term "only"—obviously a term of limitation—suggests a somewhat less expansive interpretation than that urged by the Union and adopted by my colleagues. The dispute at issue here is about performance guidelines, and it is arbitrable *only* if it involves the interpretation or application of a term or provision in the CBA, or the discipline of an employee.

The CBA contains no terms or provisions whatsoever relating to performance guidelines or standards, and this dispute concerns the performance guidelines policy itself, not the discipline of a employee pursuant to it. Nonetheless, the majority concludes that the dispute is arbitrable because it "could" involve the interpretation of the so-called "recognition" clause of the CBA. Majority op. at 6. That provision, § 1.01 of the CBA, states as follows: "The Company recognizes the Union [Local 21] as the exclusive bargaining agent for those employees of the Company in the State of Illinois . . . and Lake and Porter County [sic], Indiana."

On its face, the recognition clause merely specifies *who*—that is, which union—shall be recognized as the

employees' bargaining agent; it does not address any substantive topics pertaining to employment terms and conditions as a general matter, much less performance guidelines in particular. Nor does it articulate any duties beyond recognition or describe the scope of bargaining. Scope of bargaining issues, and the rights and obligations arising from bargaining impasses or violations, are governed by the National Labor Relations Act, 29 U.S.C. § 158 *et seq.*, and a well-developed body of judicial and NLRB decisional law interpreting the statutory duty to bargain collectively and in good faith. *See generally NLRB v. Katz,* 369 U.S. 736 (1962); *NLRB v. Ins. Agents' Int'l Union,* 361 U.S. 477, 498 (1960); *NLRB v. Wooster Div. of Borg-Warner Corp.,* 356 U.S. 342 (1958); *Inland Tugs v. NLRB,* 918 F.2d 1299, 1307-08 (7th Cir. 1990); *Kankakee-Iroquois Co. Employers' Ass'n v. NLRB,* 825 F.2d 1091, 1094 (7th Cir. 1987); *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. NLRB*, 765 F.2d 175, 179-80 (D.C. Cir. 1985). There is nothing in this generic recognition clause that could be interpreted to expand the parties' statutory bargaining duties or the derivative rights and obligations flowing from bargaining impasses or illegal bargaining behavior.

In any event, the Union does not assert that the Company failed or refused to bargain in good faith over the performance guidelines. Indeed, the record reflects that the Company gave notice of the new policy and offered to meet with Union representatives to bargain over it. The Union has historically taken the position that it will not formally "bargain" over policies of this sort but agreed to meet for informal discussions with the Company. Accordingly, meetings were held and changes made to the guidelines as a result of the Union's input and objections to specific aspects of the policy.

So it is not surprising that the Union does not argue that the Company failed or refused to bargain in good faith,

beyond suggesting that what occurred was "not bargaining in any real sense," whatever that means. The Union has not alleged, for example, that bargaining had not reached impasse before the Company imposed the performance guidelines. *See Inland Tugs*, 918 F.2d at 1307 ("In the event of impasse, the employer is permitted to make unilateral changes in conditions of employment, but only as to matters that have been previously offered to the union."); *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.*, 765 F.2d at 179 ("Where a mandatory subject [of bargaining] is not contained in the contract, an employer must bargain in good faith to impasse with union representatives; if no agreement is reached, the employer may unilaterally implement its bargaining proposal with respect to the matter not contained in the agreement."). The Union's grievance challenges the performance guidelines themselves, not the bargaining conduct of the Company.

The majority concludes that the dispute is arbitrable because the recognition clause "could" be interpreted "to prohibit the Company from making significant changes in the terms and conditions of employment without the consent of the Union." Majority op. at 6. Such an interpretation is impossible; it would require the arbitrator to completely rewrite the recognition clause, engrafting a duty that is not there. Indeed, such an interpretation would contradict well-settled principles in the case law pertaining to the statutory duty to bargain collectively and establishing the rights and obligations that arise from good-faith bargaining impasses and illegal bargaining demands. While a mandatory subject of bargaining contained in a pre-existing collective bargaining agreement may not be altered without consent, an employer is permitted to unilaterally implement new employment conditions *not* contained in the agreement after bargaining in good faith to impasse. *See Inland Tugs,* 918 F.2d at

1307-08; *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.*, 765 F.2d at 179. Also, an unfair labor practice on the part of a union suspends the duty to bargain and permits the employer to unilaterally implement new conditions of employment. *Inland Tugs,* 918 F.2d at 1308.

Because the performance guidelines are not contained in the current CBA, the Company has a good-faith bargaining duty under the NLRA but no duty to obtain consent from the Union before implementing the policy. The "no strike" provision in the CBA does not leave the Union without recourse; its remedies are in the collective bargaining process and the NLRA. The recognition clause simply is not susceptible of an interpretation that would vest the Union with the sort of veto power suggested by the majority.

The out-of-circuit case law cited by my colleagues is either distinguishable or badly reasoned. In *Oil, Chemical & Atomic Workers International Union v. Phillips 66 Co.*, 976 F.2d 277, 278-79 (5th Cir. 1992), the court held that a labor/management dispute about an employee drug testing policy was arbitrable because it arguably violated the collective bargaining agreement's recognition, just cause, and health-and-safety clauses. The court's decision did not specifically or solely rely on the agreement's recognition clause, as the majority opinion does here.

*E.M. Diagnostic Systems, Inc. v. Local 169, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America*, 812 F.2d 91, 96 (3d Cir. 1987), involved a dispute about the employer's right to subcontract work outside the bargaining unit. The collective bargaining agreement provided for arbitration of disputes "arising out of a claimed violation of this agreement" but also contained a management rights clause explicitly reserving to the employer the right to subcontract work

without interference from the union. A divided Third Circuit held the dispute was arbitrable. It was enough, the majority said, if the subject matter of the grievance fell within the "zone of interests" protected by the collective bargaining agreement. *Id.* An unfettered right to subcontract, the majority concluded, "would include the right to subcontract all work of the bargaining unit and would be inconsistent with the agreement's recognition of the Union as the bargaining agent for the Company's employees." *Id.* The dissenting judge objected that the "majority [has] redrawn the parties' Agreement," nullifying the management reservation of rights clause by way of an unbounded interpretation of the recognition clause. *Id.* at 97-98 (Garth, J., dissenting). The majority in *E.M. Diagnostics* cited no authority for its "zone of interests" approach to arbitrability questions.

Finally, *Local 1912, International Ass'n of Machinists v. United States Potash Co.*, 270 F.2d 496, 499 (10th Cir. 1959), also addressed the arbitrability of a dispute about subcontracting, although in this case the parties' agreement was silent on the subject. The Tenth Circuit held that because subcontracting could have the effect of "injuring the union as an effective bargaining unit," the dispute implicated the recognition clause of the contract and was therefore arbitrable. This holding was based on the court's rather expansive view of its interpretive task: "It would stifle the underlying purposes of the whole agreement to construe it according to its dry words. It is for us to put meat on the skeleton rather than tear the flesh from the bones." *Id.* at 498. This is hyperbole, not reasoning. I find none of these cases persuasive.

The Union argues in the alternative that § 4.01 of the CBA, the "mutual responsibility and respect" clause, is implicated in this dispute. In that clause, the parties "recognize" that "all dealings between them be, and continue to be, characterized by mutual responsibility

and respect" and that the terms of the CBA shall be applied "fairly in accord with its intent and meaning and consistent with the Union's status as exclusive bargaining representative." Because the CBA is silent about performance guidelines or standards, the Company cannot be guilty of "unfairly" applying a term of the CBA by adopting the guidelines. The Union has made no effort to identify how the performance guidelines policy itself might reflect a lack of "mutual responsibility and respect."

Accordingly, the arbitration clause—which covers only those disputes that involve an interpretation of a term or provision of the CBA or the discipline of an employee—is not reasonably susceptible of an interpretation that covers this dispute. The parties' dispute over the performance guidelines is not arbitrable.

In closing, I have serious concerns about the essentially limitless reach of today's decision. If this dispute is arbitrable as an arguable violation of the recognition clause, then almost any dispute is; any Company action that can be characterized as contrary to the Union's interests "could" violate the recognition clause if its scope is as boundless as the majority believes. Recognition clauses of this sort are routine in collective bargaining agreements, as are arbitration clauses that limit arbitration to disputes involving an interpretation or application of the terms of the parties' agreement. Henceforward, recognition clauses will be invoked as malleable enough to compel arbitration of disputes that do not squarely implicate any other term or provision of the contract. In my judgment, this violates the fundamentally contractual nature of arbitration and the axiom that "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Warrior & Gulf Navigation Co.*, 363 U.S. at 582; *AT&T Techs.,* 475 U.S. at 648-50.

No. 06-2335                                                    17

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*