Chief Judge Fuld.
 

 In 1960, the United Electrical, Radio and Machine Workers and the General Electric Company entered into a “ national ” collective bargaining agreement which covered janitors, porters and charwomen in several of the company’s plants including one in Baltimore, Maryland, and another in Hudson Falls-Fort Edward, New York. The agreement provides for grievance procedures (art. XVI) and, if those procedures prove unsuccessful, for arbitration by the American Arbitration Association (art. XVII). More specifically, article XVII recites that ‘
 
 [1]
 
 Any grievance which remains unsettled after having been fully processed * * * and which involves * * * the interpretation or application of a provision of this Agreement * * * shall be submitted to arbitration upon written request of either the Union or the Company ’ ’. However, it also provides that, if either party shall advise the American Arbitration Association that a particular grievance does not raise “ an arbitrable issue ”, the Association may not go forward with the arbitration until a court has first determined that the grievance is arbitrable (art. XVII, § 2, subd. [b]).
 

 On January 10, 1961, the Baltimore local (Local 120) presented a grievance charging that the company had violated the agreement by taking work away from janitors, porters and charwomen in its Baltimore plant and contracting for the per
 
 *329
 
 formance of such work by individuals employed by an independent janitorial concern. About two months later, on March 2, 1961, the Hudson Falls-Fort Edward local (Local 332) initiated a similar grievance complaining of the same practice at the company’s Hudson Falls-Fort Edward plant. In both instances, the grievance procedure was duly exhausted and the union requested arbitration. The company, however, refusing to arbitrate, advised the Arbitration Association that the grievances did not raise an arbitrable issue, whereupon the union instituted the present proceeding to compel arbitration.
 

 The court at Special Term dismissed the petition on the ground that
 
 “
 
 the dispute * * * does not involve interpretation or application of any provision of the collective bargaining agreement ”. The Appellate Division, one justice dissenting, reversed, declaring that, in the absence of clear language excluding the dispute in issue from arbitration, the matter was to be deemed arbitrable.
 

 Our function on this appeal is limited to ascertaining simply whether there is an arbitrable dispute for, if such a dispute exists, whether tenable or not, it must be submitted to the arbitrator. (See
 
 Steelworkers
 
 v.
 
 American Mfg. Co.,
 
 363 U. S. 564, 566-567;
 
 Steelworkers
 
 v.
 
 Enterprise Corp.,
 
 363 U. S. 593, 596;
 
 Matter of Long Is. Lbr. Co. [Martin],
 
 15 N Y 2d 380, 384-385; see, also, CPLR 7501.) And, since we are dealing with an industry affecting interstate commerce, all questions arising under this collective bargaining agreement are to be determined under Federal law (Labor Management Relations Act, § 301, subd. [a]; U. S. Code, tit. 29, § 185, subd. [a]; see
 
 Teamsters Local 174
 
 v.
 
 Lucas Flour Co.,
 
 369 U. S. 95, 102) which, we note at the outset, raises a presumption of arbitrability. (See
 
 Steelworkers
 
 v.
 
 Warrior & Gulf Co.,
 
 363 U. S. 574, 582-583;
 
 Matter of Long Is. Lbr. Co. [Martin],
 
 15 N Y 2d 380, 384-385,
 
 supra.)
 
 As we observed in the
 
 Martin
 
 case (15 N Y 2d, at p. 385) —where Federal law was applied—“ It is only where the parties have employed language which clearly rebuts [such] presumption of arbitrability, e.g., by stating that an issue either as to procedure or as to substance is
 
 not
 
 to be determined by arbitration, that the matter may be determined by the courts. In the absence of such unmistakably clear language * # * the matter is sent to the arbitrator for his determination on the merits.”
 
 *330
 
 (See, also,
 
 Steelworkers
 
 v.
 
 Enterprise Corp.,
 
 363 U. S. 593,
 
 supra.)
 

 In our view, the union’s grievances present arbitrable issues as to the “interpretation or application” of the recognition (art. I) and layoff (art. XII) provisions of the collective bargaining agreement.
 

 The company having agreed in article I “ to recognize the Union [as the] exclusive bargaining representative” of all cleaning employees at the two plants involved, it is for the arbitrator to “ interpret ” and “apply” the recognition provision to ascertain whether the contracting out of the bargaining unit work violates that provision. The position of the company is not advanced by its argument that the recognition provision merely sets forth the statutory obligation of the company to recognize the union. Even if he finds that the clause was inserted for that purpose, the arbitrator is required, nevertheless, to determine the meaning and scope of that obligation. More specifically, he must decide (1) whether it was fully carried out by the mere act of executing the agreement or (2) whether — in order to assure that the employees are not deprived of their contractual benefits — it imposes upon the employer the continuing duty of assigning work customarily performed in the plant to members of the union instead of to individuals employed by an outside contractor. (See
 
 Fibreboard Corp.
 
 v.
 
 Labor Bd.,
 
 379 U. S. 203, 211-212; see, also, Crawford, The Arbitration of Disputes Over Subcontracting, Proceedings from the Thirteenth Annual Meeting, National Academy of Arbitrators [1960], p. 51
 
 et seq.)
 

 The union’s grievances also raise a question of interpretation or application of the layoff provision, article XII, which applies to “ all cases of layoff or transfer due to lack of work”. No claim is made that there was here any lack of work to be performed by janitors, porters or charwomen. On the contrary, such work will continue to be performed in these plants but by persons who are neither members of the union nor employees of General Electric. In such a situation, where bargaining unit employees are laid off and other persons are hired to do the same work formerly performed by union members, an arbitrable question is presented whether, within the meaning of the layoff provision of article XII, there was a “ lack of work ”.
 

 
 *331
 
 In point of fact, the very parties now before us have already litigated in a case involving an arbitration clause which, as the record there establishes, not only was identical with that here under consideration but actually included the same precise provision for initial judicial determination of arbitrability. In
 
 International U. of Elec., R. & M. Wkrs.
 
 v.
 
 General Elec. Co.
 
 (332 F. 2d 485, cert. den. 379 U. S. 928, called the
 
 Bridgeport
 
 case), the United States Court of Appeals for the Second Circuit held that a grievance relating to contracting out of work “ certainly called into question the proper interpretation to be accorded several provisions of [the] collective bargaining agreement ” (p. 488). The court was there concerned with subcontracting of new construction, much of which the members of the bargaining unit were
 
 unable
 
 to perform, whereas here we are dealing with contracting out of cleaning services which
 
 could have been
 
 performed, and customarily were, by members of the union. If anything, therefore, the case before us is an even stronger one for arbitration than
 
 Bridgeport.
 

 [1]
 

 The company contends that the collective bargaining history between the parties shows that they intended to exclude contracting out from arbitration. Such evidence—which bears on the merits of the dispute — is irrelevant to the issue here presented as to whether the dispute is arbitrable. Similar evidence of collective bargaining history was ignored by the Supreme Court in the
 
 Warrior é Gulf
 
 case when it held that a contracting-out grievance was arbitrable. As the Court of Appeals for the Second Circuit declared in the
 
 Bridgeport
 
 case (332 F. 2d, at p. 490), when it refused to consider such evidence, “ while this bargaining history may prove very useful to an arbitrator in examining this grievance to determine whether the company has violated any provision of the contract by its subcontracting of work, it is of no legitimate use to a court in
 
 *332
 
 deciding whether to order the company to .submit the grievance to an arbitrator.”
 

 The order appealed from should be affirmed, with costs.
 

 Judges Burke, Bergan and Keating concur with Chief Judge Fuld ; Judges Van Voorhis and Scileppi dissent and vote to reverse upon the dissenting opinion at the Appellate Division; Judge Breitel taking no part.
 

 Order affirmed.
 

 [1]
 

 . The United States Court of Appeals for the Seventh Circuit has reached a conclusion at odds with that reached by the Second Circuit in the
 
 Bridgeport
 
 ease. (See
 
 Petroleum Workers
 
 v.
 
 American Oil Co.,
 
 324 F. 2d 903, affd. by an equally divided court 379 U. S. 130;
 
 Local U. No. 483, Int. Bro. of Boilermakers
 
 v.
 
 Shell Oil Co.,
 
 369 F. 2d 526.) We decline to follow these Seventh Circuit -decisions, since we believe them to be in conflict with that of the Supreme Court in the
 
 Warrior & Gulf
 
 case (363 U. S. 574,
 
 supra)
 
 to the extent that arbitration was denied.