**FORREST INDUSTRIES, INC.,** a corporation, Appellant,

v.

**LOCAL UNION NO. 3–436, INTERNATIONAL WOODWORKERS OF AMERICA, AFL–CIO,** a Labor Organization, **and Western States Regional Council No. 111, International Woodworkers of America, AFL–CIO,** a Labor Organization, Appellees.

**No. 21422.**

United States Court of Appeals Ninth Circuit.

July 14, 1967.

 

King, Miller, Anderson, Nash & Yerke, Norman Wiener, Portland, Or., Geddes, Felker, Walton & Richmond, Roseburg, Or., for appellant.

William Dale, Hicks, Tongue, Dale & Strader, Portland, Or., A. C. Roll, Roseburg, Or., for appellees.

Before BARNES and JERTBERG, Circuit Judges, and HILL, District Judge.

IRVING HILL, District Judge:

This action arises out of a labor dispute in the plant of a plywood manufacturing concern. The employer (appellant here) seeks damages from a local labor union and a regional council of unions (appellees here) for a strike which the employer alleges was conducted in breach of the collective bargaining agreement then in effect between it and the local union. The dispute arose when the employer, as part of an economy drive, on two of its three shifts, combined three existing positions into two. One of the three jobs was eliminated and the duties previously performed by its occupant were allocated to the two other jobs. As a result, the duties of the two remaining positions were substantially enlarged; the men occupying the abolished positions were required to assume other and different jobs; and an employee at the bottom of the seniority ladder was discharged.

The collective bargaining agreement sets up a multi-step procedure for the handling of "grievances". Where a grievance is involved, the agreement prohibits a strike unless and until all of the steps of the grievance procedure have been taken. The various steps include presentation of the grievance by the Shop Steward to the foreman or superintendent, discussion of the problem between the Shop Committee and the Employer's Committee, referral of the matter to negotiation between the Business Agent and company representatives and submission of positions of both sides to the employees in writing. A formal vote to strike is the final step.

The collective bargaining agreement is silent in many respects. Other than in-

dicating that a "grievance" may originate from one or more members of the union, it contains no definition of the term "grievance". It has no provision which excludes any group or type of disputes from the grievance procedure. It contains no statement of the rights exclusively reserved to management, no provision for arbitration and no express prohibition of strikes over non-grievance issues.

The trial court found that the instant dispute was a "grievance" within the meaning of the contract and that the union had taken all steps required by the grievance procedures of the contract before commencing the strike. The trial court therefore concluded that the strike constituted no breach of the contract and entered judgment for the defendants.

The employer concedes that all steps of the grievance procedure were followed by the union before the strike was called. But the employer argues that the changes it made in the workers' duties are exclusively within management's prerogatives, that therefore such action cannot constitute a "grievance" within the meaning of the contract and that we should interpret the contract as limiting the employees' right to strike only to disputes which constitute "grievances."

■ It is not necessary for us to decide these broad questions. If the trial court's finding that the dispute was a "grievance" is correct, the judgment must be affirmed. We hold that there is adequate factual basis to support this finding and that no error of law is involved therein.

■■ What constitutes a "grievance" as that term is used in collective bargaining agreements? Many such agreements contain a comprehensive definition of that term. See e. g. the definition quoted in Humble Oil & Refining Co. v. Independent Industrial Workers Union, 337 F.2d 321, 323 (5th Cir. 1964), cert. denied, 380 U.S. 952, 85 S.Ct. 1084, 13 L.Ed.2d 969 (1965). Where the parties fail to define the term, however, it may be impossible to formulate a generally applicable definition fixing the outer limits of the term, and an attempt to do so would seem inadvisable. As Mr. Justice Brennan has observed, words in particular collective bargaining agreements are like words in a statute. The same word may have different meanings in different contexts and the language in each agreement should be construed with reference to the particular practices, background and millieu which gave rise to its use. See concurring opinion of Brennan, J. in United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, 569, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960).

We are not, however, without guidelines in determining what is, and what is not, included within grievance procedures set up in collective bargaining agreements. We are adjured by the Supreme Court to interpret such provisions liberally in favor of inclusion. The Supreme Court has characterized a collective bargaining agreement as a "system of industrial self government" with the grievance machinery as "the very heart of the system." United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 580, 581, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960). As indicated in *Warrior*, the entering of such an agreement is an effort by the parties to provide a method of handling disputes by peaceful means, with detailed provisions (as in the instant agreement) for discussion of disputes at various levels and full ventilation of the facts and the positions of both sides. As the Court said in *Warrior*:

"Apart from matters that the parties specifically exclude, all of the questions on which the parties disagree must therefore come within the scope of the grievance and arbitration provisions of the collective agreement." Id. at 581, 80 S.Ct. at 1352.

■ Thus the teaching of *Warrior* is to the effect that a liberal and broad construction should be given to the term "grievance" in the interest of encouraging the use of machinery which the parties themselves have set up for the peaceful settlement of disputes.

We have already mentioned the effects of the changes promulgated by the employer in this case. Those changes substantially affected the duties and working conditions of a number of employees. There was evidence before the trial court that this dispute was of a type which had previously been treated by the parties as a "grievance". (Tr. pp. 121, 187.) There was evidence that a combination of duties and resultant elimination of jobs as occurred here is uniformly treated as a grievance in the plywood industry. (Tr. p. 211.) There was also evidence that the employer acquiesced in the treatment of the instant dispute as a grievance under the contract (Tr. p. 131, Ex. 20) and even boasted to the employees, in arguing its position to them, that it had faithfully followed the steps prescribed in the contract for grievances (Ex. 22).

For the reasons we have set forth, we find no error in the trial court's findings or in its decision of the case.

Affirmed.