422 F.Supp. 583 (1976)
INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA (UAW), and its Local Union No. 1007, Petitioners,
v.
WESTERN PUBLISHING COMPANY, INC., a Domestic Corporation, Respondent.
Civ. A. No. 76-C-380.
United States District Court, E. D. Wisconsin.
November 30, 1976.
James P. Maloney, Milwaukee, Wis., for petitioners.
*584 Robert Williams, Chicago, Ill., for respondent.

DECISION AND ORDER
REYNOLDS, Chief Judge.
The International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW") and its Local Union No. 1007 have petitioned the court for an order compelling the respondent company, Western Publishing Company, Inc. ("Western"), to arbitrate certain disputes between the parties pursuant to a collective bargaining agreement. Jurisdiction lies under the United States Arbitration Act, 9 U.S.C. § 4, and the Labor Management Relations Act, 29 U.S.C. § 185(a). For the reasons which follow, the petitioners' motion will be granted.
The following facts are not in dispute. On November 4, 1975, the UAW and Western entered into a three-year collective bargaining agreement, effective during the period August 18, 1975 through September 30, 1978. Article I of that agreement is entitled "Recognition and Jurisdiction" and states:
"The Company agrees to recognize the Union as the exclusive bargaining agent for all employees on matters pertaining to wages, hours and working conditions, excluding foremen and assistant formen (sic), in the following departments: [departments omitted]
"The Company agrees that work presently performed by members of the UAW shall continue to be performed by the UAW as long as it is performed at a Western operated facility in Racine County. * * *"
Article IV of that agreement is entitled "Grievances and Arbitration" and contains the arbitration clause. Section 1 of Article IV provides a five-step grievance and arbitration procedure for the resolution of "[a]ny dispute which concerns the wages or hours or working conditions, and which arises out of day-to-day operations * *." Step 5, the final step, provides for arbitration of grievances at the union's discretion:
"Step 5. The grievance shall be deemed dropped unless the Union, at its discretion, decides to appeal to arbitration and makes written request for arbitration of the grievance within ten (10) working days after the expiration of time for adjustment in Step 4. In the event the Union thus submits a grievance to arbitration, the parties shall attempt to agree upon an arbitrator. They will as soon as practical, request a list of seven (7) arbitrators from the Federal Mediation and Conciliation Service, who shall reside within a radius of 500 miles. The names shall be struck alternatively with the Union striking the first name."
Additionally, Section 1 of Article IV further defines the arbitrator's role:
"Before the submission of the grievance to the arbitrator, the Company and the Union shall attempt to set forth in writing the specific issue to be decided, and the arbitrator shall confine his decision to such issue. Only one (1) grievance involving one (1) issue shall be arbitrated at one (1) time or before one (1) arbitrator, unless the parties mutually agree otherwise. The decision of the arbitrator shall be final and binding upon the Union, employees and the Company.
"It is understood and agreed that the arbitrator shall have jurisdiction and authority only to interpret, apply or determine compliance with the express provisions of this Agreement and shall not have power or authority to add to, detract from or alter in any way such provisions. Each party shall bear its own expenses in connection with the arbitration proceedings and equally share the fee and expenses of the arbitrator and such other expenses as may be incurred by mutual agreement. All other expenses shall be borne by the party incurring them and neither party shall be responsible for the expenses of witnesses called by the other.
"In an arbitration involving a disciplinary action, an arbitrator, if he upholds such disciplinary action may, in any event, modify the penalty which was imposed by Management."
*585 Finally, attached to the collective bargaining agreement is a letter of agreement dated August 22, 1975, from Western's negotiator to the union's negotiator, the text of which follows:
 "August 22, 1975
"Mr. Charles Fiala
U.A.W. Local 1007
Racine, Wisconsin
"Dear Chuck:
"This letter will confirm the understanding reached during negotiations concerning jurisdiction of the union. It is agreed that U.A.W., Local 1007 will not have jurisdiction over any future office facility including the company offices currently located at Wadewitz Hall, Racine, Wisconsin. In addition, all pending NLRB/WERC charges, arbitration cases and related grievances concerning the jurisdiction of the U.A.W. are hereby withdrawn.
"If you are in agreement with this, please sign one copy of this letter and return the signed copy to me.
 "Sincerely,
 /s/ Larry Henrie
 Larry Henrie
 Labor Relations Consultant
 "LH/sab
 "/s/ Charlie Fiala 11/4/75
 Agreed, Charles Fiala Date
 President, Local No. 1007"
In January of 1976, the union filed two written grievances, both of which concern the subcontracting of certain work at the company's Wadewitz and Johnson Hall facilities in Racine, Wisconsin. Grievance number 76-4 concerns the union's claimed jurisdiction over snow removal operations at Wadewitz and Johnson Halls, and grievance number 76-8 pertains to the union's claimed jurisdiction over installation and maintenance of model shop equipment at those locations. During the period January 1976 through April 1976, these grievances were processed by the parties through the first four steps of the grievance procedure. On March 2, 1976, the union made a written request for arbitration in accordance with Step 5 of the grievance procedure. On April 30, 1976, the company refused to proceed to arbitration.
Before granting a petition to compel arbitration under a collective bargaining agreement, a court must make two findings: (1) that the employer and the union have an agreement to arbitrate, and (2) that the particular dispute is referable to arbitration. Atkinson v. Sinclair Refining Company, 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962).
It is the respondent company's position that the August 22, 1975, letter addendum to the bargaining agreement is unambiguous and operates to divest the union of any jurisdiction over the Wadewitz and Johnson Hall facilities, thereby implicitly removing the present disputes from the scope of bargained-for arbitration.
The petitioners contend that because the dispute arguably falls within the ambit of the arbitration clause  wages, hours, and working conditions  this court is bound to order arbitration. The petitioners view the function of the court as determining whether the parties agreed to arbitrate the grievance and not as deciding the merits of the underlying grievance; that is, the question of whether or not by signing the letter addendum the union has waived jurisdiction over Wadewitz and Johnson Halls.
In United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960), the Supreme Court defined the limited function of the court in arbitration questions under a collective bargaining agreement and held at page 568, 80 S.Ct. at page 1346:
"* * * It [the function of the court] is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract. Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator. * * *"
In United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-583, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960), the Court went on to hold:

*586 "* * * An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."
The Seventh Circuit has recently reaffirmed these principles in Inland Steel Company of America v. Local No. 1545, United Mine Workers of America, 505 F.2d 293, 298 (1974):
"* * * [T]his conclusion [of arbitrability] is enhanced by the strong public policy in favor of arbitration which was persuasively enunciated in the Steelworkers Trilogy. * * *"
Petitioners rely on the recent case of Haig Berberian, Inc. v. Warehousemen, 535 F.2d 496 (9th Cir. 1976), to support their position. In that case the Court held that the grievance of the union alleging that it was entitled to represent employees at a new facility under the jurisdictional section of its collective bargaining agreement was arbitrable. The Court expressly rejected the employer's contention that arbitration was inappropriate because the work coverage provision was not susceptible of the interpretation urged by the union.
Respondent counters that the scope of the arbitration clause here is narrower than the standard clause presented in Haig Berberian, supra, and that, therefore, the arbitration clause is not susceptible to an interpretation that the parties agreed to arbitrate the application or interpretation of the collective bargaining agreement. In Haig Berberian, the clause involved was the standard one, requiring arbitration of any difference or issue between an employee or the union and the employer and arising out of the application or interpretation of any provision of the collective bargaining agreement. Here, the arbitrability clause provides for arbitration of "any dispute which concerns the wages or hours or working conditions, and which arises out of day-to-day operations." Respondent argues that the disputes that the union seeks to arbitrate are not encompassed within the perimeters of the arbitration clause because they are not regarding day-to-day operations or conditions but, rather, concern new jurisdiction over jobs. New jurisdiction, argues the respondent, is simply not a matter of day-to-day operations. While this argument has some surface appeal, it is flawed in that it presupposes the answer to the underlying dispute. The respondent's argument assumes that the union is claiming new jurisdiction and that the effect of the jurisdictional clause of Article I is necessarily limited by the letter addendum. But it is precisely this point that the union disputes. The union's position is that the agreement as it stands expressly gives the UAW jurisdiction over the snow removal and setup positions at Johnson and Wadewitz Halls and that the union is not seeking to establish new jurisdiction. Presumably, the union will argue that its jurisdiction is determined by job function, whereas the respondent company will assert that jurisdiction is determined by job sites. The resolution of that dispute properly lies with the arbitrator.
Section 1 of Article IV of the agreement states that "the arbitrator shall have jurisdiction and authority * * * to interpret, apply or determine compliance with the express provisions of this Agreement * * *." It is such an interpretation of compliance or noncompliance with Article I that the union now seeks to arbitrate.
As this Court cannot say with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the dispute involved, the Court must order arbitration. United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960).
IT IS THEREFORE ORDERED that the petition for an order compelling arbitration be and it hereby is granted.