**ALUMINUM COMPANY OF AMERICA,**
**Petitioner-Appellee,**

v.

**INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, and UAW Local 808, Respondents-Appellants.**

**No. 78–1248.**

United States Court of Appeals,
Ninth Circuit.

Submitted Dec. 7, 1979.

Decided Aug. 11, 1980.

Rehearing Denied Nov. 3, 1980.

Henry R. Fenton, Levy & Goldman, Los Angeles, Cal., for respondents-appellants.

William C. Bottger, Jr., Latham & Watkins, Los Angeles, Cal., argued, for petitioner-appellee; Stephen L. Jones, Latham & Watkins, Los Angeles, Cal., on brief.

Before KENNEDY and HUG, Circuit Judges, and CORDOVA,* District Judge.

KENNEDY, Circuit Judge:

Appellants, International Union, United Automobile, Aerospace and Agricultural Implement Workers of America and U.A.W. Local 808 (hereinafter "the union"), appeal from the judgment of the United States District Court for the Central District of California, which held that a grievance concerning the fairness of an attendance control plan implemented by Aluminum Company of America (hereinafter "Alcoa" or "the company") is not subject to arbitration under the terms of the collective bargaining agreement entered into between the parties. We affirm.

In the spring of 1974, Alcoa and the union commenced negotiations for a new labor contract. One of the subjects of negotiation was an Attendance Control Plan ("ACP") which the company wished to implement. The company described the ACP as "an administrative technique designed to enable management to apply uniform standards to identify employees who may have an attendance problem."[1] On October 28, 1974, the parties entered into a new collective bargaining agreement. The ACP was not expressly included in the agreement.

Shortly after the October 28, 1974, agreement went into effect, Alcoa unilaterally instituted the ACP as a matter of company policy. On November 11, 1974, before any adverse action had been taken against any

---

* Honorable Valdemar A. Cordova, United States District Judge for the District of Arizona, sitting by designation.

1. Under the ACP, whenever an employee is absent, late for work or leaves early, a point or a half-point is recorded on his attendance record unless the absence was due to bereavement, jury duty, union business, vacation, injury, relief from duty, suspension, unavailable work, or military duty. Only the first day of a prolonged absence is recorded. Upon the accumulation of more than six points by an employee within any 26-week period, a review by management of the employee's record is made. If the management review shows corrective action to be warranted, a written warning may be issued to the employee that his attendance has been irregular. Upon subsequent irregular attendance, management may impose a five-day suspension or an open-ended suspension.

employee as a result of the ACP, Harvard Brenner, who had served as a negotiator for the union during the prior bargaining, filed a grievance which stated:

> Request management re-evaluate their posted attendance control policy. This policy should be changed because it is unfair. /s/ H. Brenner.

This complaint was processed through the four steps provided for in the collective bargaining agreement applicable to all grievances.[2] After completion of these four steps, the union appealed the grievance to arbitration. The arbitrator found that the grievance was arbitrable.[3]

Alcoa sought review in the district court, and the court reversed the arbitrator's determination. The court concluded:

> Petitioner and Respondent agreed during and after collective bargaining negotiations that the Attendance Control Plan was not part of the collective bargaining agreement, [and] Petitioner neither intended to nor did agree to arbitrate the issue of the fairness of the Attendance Control Plan provisions.

Whether the parties have agreed to submit a particular dispute to arbitration is initially a question for the courts, *Leyva v. Certified Grocers of California*, 593 F.2d 857, 861 (9th Cir.), *cert. denied*, 444 U.S. 827, 100 S.Ct. 51, 62 L.Ed.2d 34 (1979).

The agreement establishes an initial four-step procedure for resolving all grievances, both arbitrable and nonarbitrable.[4] Article IV of the Agreement provides:

> The grievance procedure may be applied to any differences, disputes or complaints regarding the interpretation of application of this Agreement, or regarding matters of wages, hours, and working conditions excluded from or not covered by this Agreement.

The agreement also states, "Not all grievances are subject to arbitration." Those disputes which are arbitrable are defined as follows:

> The Board of Arbitration shall regard the provisions of this Agreement and the Local Agreement Supplements as the basic principles of the parties. The Board's function is to interpret the provisions of the Agreement and to decide cases of alleged violation of such provisions. The Board shall not supplement, enlarge, diminish, or alter the scope or meaning of the Agreement as it exists from time to time, or any provisions therein, nor entertain jurisdiction of any subject matter not covered thereby except to the extent necessary to determine its jurisdiction.

Upon a determination that a grievance is nonarbitrable, the parties enter a five-day negotiation period. If no settlement is reached during that period, the agreement explicitly permits the union to strike over the dispute.[5]

The arbitrator concluded he had jurisdiction because operation of the ACP might lead to an employee being suspended or discharged, and this disciplinary action might violate a "just cause" provision in the agreement. Article I of the agreement, entitled "Purpose and Scope," provides:

> *Section 3. Direction of the Working Forces*

---

**2.** If an employee has a grievance, either the employee or the union as his representative may seek relief: (a) with the immediate foreman or supervisor; (b) with the department head or his representative; (c) with the highest ranking local company representative; and then (d) in writing, with the President or other general executive of the company. Article IV, section 6.

**3.** Under the provisions of the collective bargaining agreement, the arbitrator at the least has jurisdiction to determine his own jurisdiction. *See* pp. 1342–1343 *infra*.

**4.** *See* n. 1, *supra*.

**5.** Section 15 of the agreement provides in part:

> B. As to any dispute not subject to arbitration, no strike, work stoppage, or lockout will be caused or sanctioned until negotiations have continued over a period of at least five (5) days at the final step of the grievance procedure described in Article IV (Grievance Procedure), and not even then shall a strike occur unless sanctioned by the International Union, UAW. Thereafter any strike which occurs under such circumstances shall not be deemed to be a violation of this Agreement, which shall continue to remain in full force notwithstanding such strike.

Except as may be limited by the provisions of this Agreement the operation of the plant and the direction of the working forces, including the right to hire, lay off, suspend, dismiss and discharge any employee for proper and just cause are vested exclusively with the Company.

Such a breach of the contract, concluded the arbitrator, would be an arbitrable grievance.[6]

A case is most clearly arbitrable under the terms of an agreement such as the one before us when the union alleges a concrete violation of the agreement and interpretation or application of the agreement is required to resolve the dispute. We can assume, for example, that a particular discharge or suspension resulting from disputed application of some provision of the agreement would present an arbitrable grievance. The union in such a case could argue that the action was not taken with "just cause" and therefore was a breach of the agreement. See, e. g., *Johnston-Tombigbee Furniture Manufacturing Co. v. Carpenters Local 2462*, 596 F.2d 126 (5th Cir. 1979). Cf. *United Packinghouse Workers, Local 721 v. Needham Packing Co.*, 376 U.S. 247, 252, 84 S.Ct. 773, 776, 11 L.Ed.2d 680 (1964). The arbitrator can focus on the propriety of the particular action taken, and his consideration of whether aspects of the policy violate the collective bargaining agreement is influenced by particular facts and the way the policy is applied in the particular case.

In this case, by contrast, at the time the grievance was filed, the ACP had not resulted in any disciplinary action against any employee. Nearly any general policy adopted by an employer, especially those involving wages, hours, or working conditions, could lead to suspension, discharge, or dismissal of an employee. If the policy relates directly to disciplinary matters, its application could result in the employee's being suspended or fired. Similarly, even if the policy does not relate directly to disciplinary action, violation of the policy could lead to suspension or discharge. *United Steelworkers v. Warrior & Gulf Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960), and their numerous progeny establish a very strong presumption of arbitrability. See, e. g., *International Association of Machinists v. Howmet Corp.*, 466 F.2d 1249 (9th Cir. 1972). We do not think, however, that most contracting parties intend an arbitrator to acquire jurisdiction to adjudicate the fairness of any general policy on the grounds that application or violation of the policy might, in particular cases arising in the future, result in employer action violating a "just cause" limitation on the employer's power to lay off, suspend, dismiss or discharge

---

**6.** The arbitrator concluded:

The Company's contention is that the ACP is a "policy" and as such, it is not subject to arbitration. It is true, there is no mention of any ACP in the contract. As has been pointed out above, the ACP was not the product of negotiations. It was unilaterally promulgated by the Company. Under the provisions of the ACP, as this Umpire noted in the Opinion and Award in Case No. 288(a)–V, certain incidents are specified as being "Irregular Attendance." If enough "points" are assessed against an employee during a given period of time he may receive a written warning followed by a five day suspension followed by an "open end suspension." Unless "closed" somehow, it appears that an "open end suspension" can be tantamount to discharge. Clearly, the concept of "just cause" for disciplinary action taken against employees is a contractual concept and is within the jurisdiction of the Board of Arbi-

tration. The undersigned Umpire can find nothing in the jurisdiction provision of the contract [*quoted supra*] which prevents the Board of Arbitration from hearing a grievance challenging the ACP. This grievance, in essence, does just that. The grievance is arbitrable.

Although it is not necessarily fatal to the union's claim, we note that Brenner's grievance did not seek to settle an issue assertedly arising under the contract. The union's grievance was that the ACP should be reconsidered because it was "unfair." The portions of the record to which we have been directed suggest that it was the arbitrator, not the union, who referred to the just cause provision of the agreement. Neither the arbitrator nor the union suggested any part of the collective bargaining agreement, other than the words "just cause," to which an arbitrator could look for guidance in deciding the union's grievance.

employees. The agreement in this case contemplates the filing of grievances regarding matters of wages, hours, and working conditions, which are excluded from or not covered by the agreement, see Article IV, quoted at pp. 1342–1343 supra. Such grievances are beyond the jurisdiction of the arbitrator and are not arbitrable.

■ Neither the union nor the arbitrator suggest any limiting principle to contain the logic of their position, which would seemingly make arbitrable any company policy application or violation of which could conceivably lead to disciplinary action. The parties did not intend the just cause provision to make arbitrable all disputes which might relate to wages, hours, and work conditions and might result in disciplinary action. The district court did not err in concluding that the parties did not intend the question of the fairness of the ACP to be decided by an arbitrator in the context of whether the policy in the abstract violated the agreement's "just cause" limit on the employer's power to suspend or discharge particular employees.[7] The ACP may be unfair or an impermissible company policy, but the parties agreed to leave resolution of these issues to the collective bargaining process, negotiation, the economic strength of the parties, and such judicial action as may be available,[8] at least until the policy is applied in particular cases. Arbitration of grievances is a distinct procedure from collective bargaining, see, e. g., Alfred M. Lewis, Inc. v. N. L. R. B., 587 F.2d 403 (9th Cir. 1978). One cannot always be substituted for the other, and a party may not always seek to have resolved through arbitration those matters which it was not successful in resolving through bargaining.

While not directly addressing the question, the Union suggests that the arbitrator had jurisdiction to determine whether the ACP violates some implied commitment on the part of the employer to act fairly or in good faith. This contention, too, must fail. The provisions of a collective bargaining agreement are not limited to its express terms, see, e. g., Warrior & Gulf, supra, 363 U.S. at 578–82, 80 S.Ct. at 1350–1352; Howmet, supra, 466 F.2d at 1252; Anaconda Co. v. Great Falls Mill & Smelterman's Union No. 16, 402 F.2d 749 (9th Cir. 1968). In this case, however, any contention that the employer violated a general implied contractual obligation of good faith would appear to suffer from the same difficulties which led us to conclude that the just cause provision in the agreement did not make the grievance in this case arbitrable. Indeed, nearly any employer practice which an employee thought was unfair seemingly could be taken to arbitration on the theory that the employer impliedly promised not to take unfair actions. Recognizing the existence of implied promises and a "common law" of the shop which has its roots in the collective bargaining agreement, we do not think the Court's Steelworkers decisions would require the grievance in this case to be arbitrated on the above theory.[9]

■ Finally, the district court did not err in refusing to award attorneys' fees to the union. See Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); General Telephone Co. v. IBEW, 554 F.2d 985 (9th Cir.

---

7. A dispute resulting from the layoff, suspension, dismissal, or discharge of an employee as a result of application of the ACP might present an arbitrable dispute, see pp. 1342–1343 supra; we do not hold here that the concept of "just cause" contained in section 3 of the agreement can be violated only by employer action contravening another portion of the bargaining agreement.

8. Although factually distinguishable, our conclusion finds support by analogy in Communication Workers of America v. Pacific Northwest Bell Telephone Co., 337 F.2d 455 (9th Cir. 1964); RCA v. Association of Scientists and

Professional Engineers, 414 F.2d 893 (3d Cir. 1969); Cook v. Gristede Bros., 359 F.Supp. 906 (S.D.N.Y. 1973); and Marine Engineers Beneficial Ass'n. v. Falcon Carriers, Inc., 374 F.Supp. 1342 (S.D.N.Y. 1974), and cases cited therein. Our discussion in the text indicates the relevant differences between this case and International Ass'n of Machinists v. Howmet Corp., 466 F.2d 1249 (9th Cir. 1972).

9. Although it does not bear directly on the policies underlying the desirability of arbitrating labor disputes, we note that in this case the employees retain the right to strike over nonarbitrable disputes.

1977); *Burroughs v. Board of Trustees*, 542 F.2d 1128, 1131–32 (9th Cir. 1976), *cert. denied*, 429 U.S. 1096, 97 S.Ct. 1113, 51 L.Ed.2d 543 (1977).

The judgment of the district court is AFFIRMED.