**INDEPENDENT FOODHANDLERS AND WAREHOUSE EMPLOYEES' UNION, Plaintiff,**

v.

**SHAW'S SUPERMARKETS, INC., Defendant.**

Civ. A. No. 84–425–G.

United States District Court, D. Massachusetts.

May 30, 1984.

David B. Rome, Angoff, Goldman, Manning, Pyle, Wanger & Hiatt, Boston, Mass., for plaintiff.

Murray Freeman, Nutter, McClennen & Fish, Boston, Mass., for defendant.

## MEMORANDUM AND ORDER AFFIRMING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

GARRITY, District Judge.

This is a labor dispute concerning an arbitration award that ordered back pay to

an employee who was disciplined for wearing blue jeans at work. Plaintiff Independent Foodhandlers and Warehouse Employees' Union ("the Union") seeks to have the award confirmed; defendant Shaw's Supermarkets, Inc. ("the Company") seeks to have it vacated. Before us now are cross-motions for summary judgment.[1]

The material facts are not in dispute. The Company and the Union are parties to a collective bargaining agreement, effective July 27, 1982 through July 26, 1985. The agreement permits the Company to discipline employees "for proper cause." It does not, however, mention a dress code.

On April 23, 1983 a clerk in the Company's delicatessen department was sent home for wearing blue jeans in violation of the Company's dress code.[2] The clerk returned to work approximately three and one-half hours later wearing slacks that conformed to the code. Her pay was docked for the time she was away.

The Union filed a grievance on the clerk's behalf. The matter ultimately was presented to an arbitrator, who concluded that the grievance was arbitrable and that the clerk had been sent home and docked pay without "proper cause" because the Company's blue jeans prohibition, as applied to the clerk, was unreasonable.

The Company contends that the arbitrator exceeded his authority under the collective bargaining agreement by failing to give effect to two provisions. Articles 20 and 21, it argues, reserved to the Company all management rights not specifically mentioned in and qualified by other provisions of the agreement.[3] Since no other provision refers to a dress code, the Company says it retained the right to promulgate and enforce one unilaterally. The arbitrator's role, according to the Company, simply was to determine whether the employee violated the blue jeans prohibition. If she did, the Company had "proper cause" to discipline her. By assessing the reasonableness of the prohibition itself, the Company argues, the arbitrator modified the terms of the agreement in violation of the arbitration clause.[4]

Whether the reasonableness of the dress code, as applied to the employee in this case, is an arbitrable issue depends upon our interpretation of the collective bargaining agreement. *Mobil Oil Corp. v. Oil, Chemical & Atomic Workers Local 8-766*, 1 Cir.1979, 600 F.2d 322, 324–25. Unless we can say "with positive assurance" that the issue is not arbitrable, the arbitrator's award must stand. *United Steelworkers v. Warrior & Gulf Co.*, 1960, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409.

Nothing in the collective bargaining agreement limits the arbitrator's authority

1. Both parties filed complaints. The Company's complaint was consolidated with the Union's—hence the designation of the parties plaintiff and defendant.

2. The parties dispute how long the code has been in effect and how vigorously and uniformly it has been enforced. These facts are not material to the legal issues presented by the summary judgment motions.

3. Article 20 provides:
   The Employer retains the sole right to manage its business including ... [the right] to discipline, demote and discharge Employees for proper cause ... subject only to such regulations and restrictions governing the exercise of these rights as are expressly provided in this Agreement.
   Article 21 provides:
   All of the contractual commitments of the Employer with reference to all matter of wages, hours, and other conditions of employment have been integrated and incorporated into this Agreement—those matters not specifically referred to herein having been raised and disposed of ....

4. The arbitration clause in Article 13 provides:
   The Arbitrator shall, however, have no power either to add to or subtract from, or to modify any of the terms of the Agreement, or any Agreement made supplementary thereto. If either party contends that the above provision has been violated, the matter may be referred to any court of competent jurisdiction which shall have the power to determine the question and which shall interpret this agreement in accordance with commonly accepted meaning of the words used herein and the principle that the parties are agreed that there are no restrictions intended on the management of the Company other than those expressly set forth herein.

to interpret and apply the "proper cause" provision in the manner suggested by the Company. Such a limitation must be stated explicitly in the agreement. *Ceres Marine Terminals, Inc. v. Int'l Longshoremen's Ass'n,* 7 Cir.1982, 683 F.2d 242, 247. In *St. Louis Theatrical Co. v. St. Louis Theatrical B'hood,* E.D.Mo.1981, 543 F.Supp. 1, for example, a case on which the Company relies, the agreement stated that any employee participating in a prohibited work stoppage "[m]ay be disciplined or discharged and shall have no recourse to any other provision of this Agreement except as to the fact of participation." Relying on this "decisive" language, the court held that the only arbitrable issue was whether an employee had participated in the work stoppage; the arbitrator had no authority to consider the reasonableness of the punishment. In the instant case there is no comparable provision limiting the authority of the arbitrator. "If the company wanted such a [limitation], it should have attempted to negotiate such a contract." *Johnston-Tombigbee Furniture Mfg. v. Carpenters Local No. 2462,* 5 Cir.1979, 596 F.2d 126, 129.

■ Common sense tells us that the scope of arbitral review under the "proper cause" provision necessarily includes assessing the reasonableness of the rule an employee was punished for violating. Otherwise the Company could discipline an employee for violating a patently unreasonable rule. If, for example, the Company announced that all employees must enter and exit the workplace walking backwards, an employee disciplined for violating the rule could arbitrate only whether he had entered and exited as required. We do not think, however, that most contracting parties assign such a hollow meaning to the words "proper cause." Rather, the plain meaning of the provision contemplates arbitral review of the Company's rules as well as the employees' conduct.

■ The Company's argument that Articles 20 and 21 preserve its right to promulgate a non-arbitrable dress code misses the point. Once it chose to enforce the code by disciplining an employee, the Company sub-mitted the code to arbitral review. Had the Company wished to insulate the code from review, it could have enforced the code by means other than discipline, such as reward.

The Company complains that the non-arbitrable rights it retains in Articles 20 and 21 are worth little if they cannot be enforced through non-arbitrable discipline. "That may well be, but it is not our function to construe contracts liberally in order to give effect to poorly drafted exclusionary clauses; instead we must construe exclusionary clauses strictly in order to give effect to our national policy in favor of arbitration." *Johnston-Tombigbee, supra* at 129.

Our conclusion finds support in *ALCOA v. Int'l Union,* 9 Cir.1980, 630 F.2d 1340. In that case the employer unilaterally instituted an "attendance control plan" designed to monitor unexcused employee absences. The plan was a subject of contract negotiations between the employer and the union but was not expressly included in the collective bargaining agreement. Before any adverse action had been taken against any employee as a result of the plan, the union filed a grievance challenging the plan as unfair. An arbitrator concluded that the grievance was arbitrable because "operation of the [plan] might lead to an employee being suspended or discharged, and this disciplinary action might violate a 'just cause' provision in the agreement." *Id.* at 1342. The court reversed the arbitrator's decision and held that the grievance was not arbitrable:

> [M]ost contracting parties [do not] intend an arbitrator to acquire jurisdiction to adjudicate the fairness of any general policy on the grounds that application or violation of the policy might, in particular cases arising in the future, result in employer action violating a 'just cause' limitation on the employer's power to [discipline] employees.

*Id.* at 1343–44. The court based its decision on the limitlessness of the arbitrator's logic, which would seemingly make arbitrable any company policy, application or violation of which could conceivably lead to disciplinary action.

The *ALCOA* court noted, however, that a dispute resulting from the discipline of an employee as a result of application of a company policy might present an arbitrable dispute. *Id.* at 1344 n. 7. The arbitrator could then "focus on the propriety of the particular action taken, and his consideration of whether aspects of the policy violate the collective bargaining agreement [could be] influenced by particular facts and the way the policy is applied in the particular case." *Id.* at 1343.

The instant case falls squarely within the limits to arbitration carved out by the *ALCOA* court. The arbitrator ruled only that the Company's blue jean prohibition was unreasonable as applied to the employee in this case.[5] His decision was based on an interpretation of the "proper cause" limit on the Company's power to discipline a particular employee, not an abstract assessment of the fairness of a company policy.

For the foregoing reasons, plaintiff's summary judgment motion is allowed and defendant's summary judgment motion is denied.[6]

---

5. The arbitrator noted, for example, that as a delicatessen clerk, the grievan. wore a knee-length smock and was on the sales floor (so that the below-the-knee portion of her pants would be visible to customers) for no more than several minutes each day.

6. The Company's challenge to the arbitrator's award, while unsuccessful, is not "without justification." *See Courier-Citizen Co. v. Boston Electrotypers Union No. 11,* 1 Cir.1983, 702 F.2d 273, 282. The Union's motion for attorneys' fees therefore is denied.