OIL, CHEMICAL & ATOMIC WORKERS
INTERNATIONAL UNION and its Lo-
cal 4–227, AFL–CIO, Plaintiffs,

v.

PHILLIPS 66 COMPANY, Defendant.

Civ. A. No. H–90–2704.

United States District Court,
S.D. Texas,
Houston Division.

Oct. 7, 1991.

Patrick M. Flynn, Watson, Flynn & Ben-
sik, Houston, Tex., for plaintiffs.

V. Scott Kneese, Bracewell & Patterson,
Houston, Tex., for defendant.

## MEMORANDUM AND ORDER

LAKE, District Judge.

This action involves the scope of arbitra-
tion under a Working Agreement between
plaintiffs, Oil, Chemical & Atomic Workers
International Union, AFL–CIO, and its Lo-
cal 4–227 ("the Union"), and defendant,
Phillips 66 Company. The Union alleges
that Phillips 66 violated the Working
Agreement by unilaterally enacting a sub-
stance control policy and seeks to compel
arbitration of a grievance over the policy.
Pending before the Court are cross-motions
for summary judgment on the arbitrability
of the grievance.

Phillips 66 has had a collective bargain-
ing relationship with the Union since 1952.
The current Working Agreement describes
the terms and conditions of employment
for covered employees at Phillips 66's
Houston Chemical Complex and runs from
February 1, 1990, to January 31, 1993. Ar-
ticle VI.5 of the Working Agreement man-
dates a detailed procedure for resolving
"[a]ny grievance or dispute arising out of
the application or interpretation of this
Working Agreement." The last step in the
procedure is arbitration. Article VI.5.a.(5)
and b.(4).

In 1987 Phillips 66 announced its desire
to institute a drug control policy that would
allow Phillips 66 to test employees for drug
and alcohol use. Phillips 66 and the Union
collectively bargained over the policy be-
tween March 27, 1990, and May 22, 1990,
and agreement was reached on some, but
not all, issues. On May 23, 1990, Phillips
66 informed the Union of its "best and final
offer," and that it intended to unilaterally
implement the substance control policy on
June 1, 1990. On June 1, 1990, notices

were posted informing employees that the policy was in force.

On June 5, 1990, the Union filed a grievance over the implementation of the substance control policy. The grievance alleged that implementation of the policy violated the Recognition Clause and Article VI, which prohibits discharges without just cause, and Article XV, which deals with health and safety. On June 8, 1990, Phillips 66 denied the grievance. On June 12, 1990, the Union filed a request for arbitration. On June 22, 1990, Phillips 66 notified the Union that it would not agree to submit the grievance to arbitration because implementation of the substance control policy was neither a grievable issue nor an arbitrable matter since the complaints raised in the grievance did not arise out of the application or interpretation of the Working Agreement.

■ Because this type of arbitration arises from the contract of the parties, Phillips 66 cannot be required to arbitrate the Union's grievance unless it agreed to do so in the Working Agreement. Whether a collective bargaining agreement creates a duty to arbitrate a particular grievance is a question of law to be determined by the Court from the language of the agreement. *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648–49, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986). Because federal labor policy favors arbitration, if a contract contains an arbitration clause, normal rules of contract construction do not apply. "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Id.* 106 S.Ct. at 1419, *citing, United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 581–82, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960). A grievance is arbitrable unless there is either an "express provision excluding a particular grievance from arbitration," or "the most forceful evidence of a

purpose to exclude the claim from arbitration...." *Id.*

■ Phillips 66 agrees that disciplinary actions taken under the substance control policy would be subject to the grievance and arbitration procedure of Article VI of the Working Agreement. Phillips 66 argues, however, that the substance control policy itself is separate and distinct from the Working Agreement and that issues concerning the implementation of the policy are not arbitrable under the Working Agreement. Relying principally on *Aluminum Company of America v. International Union v. United Automobile, Aerospace & Agricultural Implement Workers of America*, 630 F.2d 1340 (9th Cir.1980) ("*ALCOA*"), Phillips 66 argues that its obligation to arbitrate applications of the substance policy does not encompass arbitration of a grievance over the reasonableness of the policy itself.

Some of the facts of *ALCOA* are similar to those of this case. ALCOA unilaterally instituted an Attendance Control Plan ("ACP") designed to monitor unexcused employee absences. Although the plan was a subject of negotiations between AL-COA and the union, it was not included in the collective bargaining agreement. Like the Phillips 66 Working Agreement, the ALCOA agreement provided for grievance and arbitration of "any differences, disputes or complaints regarding the interpretation or application of this Agreement ..." Both the Phillips 66 and ALCOA agreements contemplated that the grievance and arbitration procedures were to apply to cases involving particular employee complaints. *Compare* Article VI.5.a. and b. with Article IV of the ALCOA agreement, quoted at 630 F.2d at 1342. Unlike the Phillips 66 agreement, the AL-COA agreement stated that "[n]ot all grievances are subject to arbitration." The AL-COA agreement provided that the Board of Arbitration had authority to "interpret the provisions of the Agreement and to decide cases of alleged violation of such provisions," but that "[t]he Board shall not ... entertain jurisdiction of any subject matter not covered [by the Agreement] except to

the extent necessary to determine its jurisdiction." *Id.* There is no similar language in the Phillips 66 agreement.

Before any adverse action had been taken against any employee as a result of the ACP, the union filed a grievance challenging the ACP as unfair. An arbitrator concluded that the grievance was arbitrable because operation of the ACP might lead to the suspension or discharge of an employee, and such a disciplinary action might violate a "just cause" provision in the Agreement. 630 F.2d at 1342. ALCOA appealed the arbitrator's decision to the district court, which reversed it. The Ninth Circuit affirmed, holding that the grievance was not arbitrable:

> We do not think, however, that most contracting parties intend an arbitrator to acquire jurisdiction to adjudicate the fairness of any general policy on the grounds that application or violation of that policy might, in particular cases arising in the future, result in employer action violating a "just cause" limitation on the employer's power to [discipline] employees.

*Id.* at 1343–44.

In addition to this concern, the Ninth Circuit was disturbed because the collective bargaining agreement did not provide any criteria for an arbitrator to use in evaluating the union's grievance over the ACP until it had been applied to particular facts. "Neither the arbitrator nor the union suggested any part of the collective bargaining agreement, other than the words 'just cause,' to which an arbitrator could look for guidance in deciding the union's grievance." 630 F.2d at 1343, n. 6.

This Court concludes that Phillips 66's reliance on *ALCOA* is misplaced because the Phillips 66 Working Agreement is distinguishable in material respects from the ALCOA agreement. *ALCOA* relied on specific contract language (quoted above) indicating that the parties did not intend an expansive reading of the arbitration clause. In Article VI.5 of the Working Agreement the Union and Phillips 66 agreed that "*[a]ny* grievance *or dispute* arising out of the application *or interpretation* of this Working Agreement *shall* be handled in the following manner." (emphasis added) It is a fundamental tenet of contract construction that all provisions of a contract are intended to have meaning. Presumably, Phillips 66 and the Union intended to use the word "or" instead of "and," and intended that the words "dispute" and "interpretation" have some meaning. "Dispute" has a meaning broader than "grievance" and encompasses the Union's present disagreement, albeit labeled as a "grievance," about the implementation of the substance control policy. *Cf.* Labor Management Relations Act, 1947, 29 U.S.C.A. § 152(9). Likewise, "interpretation" has a different, and broader, meaning than "application."

Although Article IV of the ALCOA agreement also permitted arbitration of "disputes or complaints regarding the interpretation or application of th[e] Agreement," the parties to that agreement, unlike the present parties, stated that "[n]ot all grievances are subject to arbitration" and limited arbitrable disputes to "cases of alleged violation[s] of [the Agreement]." Phillips 66 argues that Article VI.5 is likewise limited by the procedural steps of Article VI.5.a. and b., which contemplate that a necessary prerequisite to arbitration is an employee-initiated grievance, and by the next-to-last sentence of Article VI.5.a.(6), which states that an arbitrator "shall have the authority only to interpret the existing provisions of this Agreement and apply them to the specific facts of the grievance or dispute."

The Court is not persuaded by Phillips 66's argument. The argument is partially undercut by Article VI.6, which states that "[w]here the word 'employee' appears in this Article with regard to a complaint or grievance, the word 'employees' may be substituted if more than one (1) employee is concerned with the same set of facts that constitute the basis for the complaint or grievance." Also, as discussed below, the Union's grievance asks that an arbitrator interpret various substantial provisions of the Working Agreement, not merely the just cause provision as in *ALCOA,* and

apply them to the facts of the Union's grievance.

The Court reads Article VI to mean that a grievance, such as the instant one, filed by the Union on behalf of all covered employees concerning an "interpretation" of the Agreement satisfies the procedural requirements of Article VI. When read in this manner, the next-to-last sentence of Article VI.5.a.(6) does not compel the conclusion that the parties intended arbitration to be limited to cases of actual employee discipline under the substance control policy. As the Supreme Court has admonished:

> In the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail, particularly where, as here, the exclusion clause is vague and the arbitration clause quite broad.

*Warrior & Gulf,* 363 U.S. at 584–85, 80 S.Ct. at 1354. Here, the limiting language is susceptible to more than one interpretation. For example, given the lack of any expressed limitation of the rights about which an employee may complain under Article VI.5.a.(1), "specific facts," as used in Article VI.5.a.(6), may include the facts of the implementation of the substance control policy about which the employees, through the Union, complained.

Given the vagueness of this phrase, and the broad arbitration language of Article VI.5, a fair reading of Article VI.5 of the Phillips 66 Working Agreement under the *Warrior & Gulf* lens leads the Court to conclude that arbitration is not limited to actual controversies involving application of the agreement. The Court concludes that the Phillips 66 arbitration clause does not meet either of the *Warrior & Gulf* tests for exemption from arbitration. It does not expressly exclude the Union's grievance over implementation of the substance control policy nor does it provide forceful evidence of an intent to exclude this grievance from arbitration.

The Court must also address Phillips 66's argument that provisions other than the arbitration clause provide forceful evidence of a purpose to exclude the claim from arbitration. Resolution of this issue requires the Court to analyze the substantive provisions of the Working Agreement that the Union contends were violated by implementation of the substance control policy.

First, the Union argues, and its grievance alleged, that by implementing the policy, Phillips 66 violated the Recognition Clause, in which Phillips "recognizes the union as the sole and exclusive bargaining agent, with respect to rates of pay, wages, hours, and other conditions of employment...." (Working Agreement, p. 1) The Recognition Clause further states that "[i]t is agreed that this instrument contains the full and complete agreement between the Company and the Union and supersedes and replaces all prior agreements." The Union argues that this language means that during the life of the Working Agreement there can be no changes in mandatory subjects of bargaining, such as the substance control policy, without the mutual agreement of Phillips 66 and the Union. (Plaintiffs' Reply to Defendant's Response to Plaintiffs' Motion for Summary Judgment at pp. 3 and 4)

Phillips 66 argues that the Working Agreement does not require it to obtain written agreement on all mandatory subjects of arbitration. Phillips 66 cites two cases in which courts refused to order arbitration even though the collective bargaining agreements contained recognition clauses. In *Independent Petroleum Workers of America, Inc. v. American Oil Co.,* 324 F.2d 903, 906 (7th Cir.1963), *aff'd,* 379 U.S. 130, 85 S.Ct. 271, 13 L.Ed.2d 333 (1964), the Seventh Circuit stated that the recognition clause only required the employer to bargain in good faith. *American Oil* is distinguishable in two respects. First, in the present case the Union points not just to the general recognition language of the Recognition Clause, but also to additional merger language that the only agreements between the Union and Phillips 66 are contained in the Working Agreement. Second, the arbitration provisions in the *American Oil Co.* agreement were

more limited in scope than in the instant agreement and essentially provided for arbitration only of actual cases or controversies arising under the collective bargaining agreement. In the other case cited by Phillips 66, *Association of Chemical Employees v. E.I. Dupont de Nemours & Co.,* 701 F.Supp. 1282 (S.D.W.Va.1988), the agreement contained a recognition clause, but the court found that no provision in the agreement required arbitration of the unilateral implementation of Dupont's drug testing policy. However, the court's opinion contains no analysis of the arbitrability of a grievance brought under the recognition clause, perhaps because the grievance did not assert a violation of that clause. *See* Finding of Fact 20; 701 F.Supp. at 1287.

In determining arbitrability the Court may not address the potential merits of the Union's underlying claim. *AT & T Technologies, supra,* 475 U.S. at 649–50, 106 S.Ct. at 1419. Given the merger language in the Phillips 66 Recognition Clause and the broad scope of the arbitration clause, this Court cannot conclude that Phillips 66 has satisfied the *Warrior & Gulf* criteria by presenting forceful evidence that the parties intended to exclude from arbitration the Union's grievance that implementation of the substance control policy violated the Recognition Clause. The fact that the Union and Phillips 66 take different views on the merits of this issue indicates that there is in fact a "dispute" over the "interpretation" of the Recognition Clause.

The Union's grievance also alleged that the substance control policy violated Article XV, dealing with health and safety. Article XV.1 establishes a joint labor-management health and safety committee. Article XV.8 states that the joint committee is to meet as often as necessary "for the purpose of considering, inspecting, investigating and reviewing health and safety conditions and practices.... The Joint Committee shall make constructive recommendations with respect thereto, including but not limited to the implementation of corrective measures to eliminate unhealthy and unsafe conditions and practices and to improve existing health and safety conditions and practices." Article XV.10 provides that "the Company intends to continue its existing industrial hygiene program as administered by Company personnel," and Article XV.11 states that "[a]ny dispute arising with respect to the interpretation or application of the provisions hereof shall be subject to the grievance and arbitration procedures set forth in the Working Agreement." One could certainly argue, as does the Union, that the right of Phillips 66 unilaterally to implement the substance control policy presents a dispute over the correct interpretation of Article XV, and in particular of Article XV.10 of the Working Agreement. Clearly Article XV does not evidence the parties' intent to exclude this grievance from arbitration.

Finally, the Union argues that implementation of the substance abuse policy violates Article V.19's prohibition against discharging employees without just cause. Phillips 66 replies that "[t]he provision governing 'cause' terminations does not *on its face* commit the company to arbitrate the implementation and/or reasonableness of the substance policy." (Defendant's Response to Plaintiffs' Motion for Summary Judgment at p. 6) Phillips 66 concedes that if it took disciplinary action against an employee under the substance control policy, the reasonableness of the policy would be arbitrable:

> Phillips 66 readily admits that it would be obligated to arbitrate any discharge under the substance policy and that an arbitrator in determining "cause," may at that time, choose to review the reasonableness of the substance policy.

*Id.* at p. 7. Although this Court, like the Ninth Circuit in *ALCOA, see* 630 F.2d at 1343, n. 6 and 1344, is somewhat troubled by the absence in the Working Agreement of standards that an arbitrator would look to in determining the reasonableness of the substance control policy under the just cause provision, Phillips 66 concedes that were a ripe application of the policy presented, the arbitrator could review the reasonableness of the policy.

When faced with a Working Agreement with an expansive arbitration clause that is

not expressly limited in scope to ripe cases and controversies, and which allows arbitration of "disputes" involving "interpretations," the Court concludes that Phillips 66 has not shown by forceful evidence that the parties intended to exclude from arbitration the Union's grievance that implementation of the substance control policy violated the Recognition Clause, the just cause clause, and the health and safety article. Although Phillips 66 argues with some force that the reasonableness of the substance control policy is an issue that should be "left to negotiations and the economic strength of the parties at least until such time as the policy may be applied in a specific case" (Defendant's Response to Plaintiffs' Motion for Summary Judgment at p. 11), Phillips 66 negotiated and agreed to a Working Agreement that by its terms, when construed in light of *Warrior & Gulf,* permits arbitration of this issue. Accordingly, Phillips 66's motion for summary judgment is DENIED and the Union's motion for summary judgment is GRANTED.[1]

---

1. The Court has considered, but is not persuaded by, Phillips 66's argument that the Union seeks to compel interest or new contract arbitration. Interest arbitration is arbitration of terms that are not contained in an existing contract. *NLRB v. Columbus Printing Pressmen,* 543 F.2d 1161, 1163, n. 4 (5th Cir.1976). The arbitration sought by the Union in this case relates to the interpretation of terms of the existing Working Agreement, and is therefore not interest arbitration. *See International Union, United Automobile Aerospace & Agricultural Implement Workers of America v. Exide Corp.,* 688 F.Supp. 174, 182–184 (E.D.Pa.), *aff'd,* 857 F.2d 1464 (3d Cir. 1988).