952 F.2d 1073
 139 L.R.R.M. (BNA) 2104
 DENNIS L. CHRISTENSEN GENERAL BUILDING CONTRACTOR, INC., a
California corporation, Plaintiff-Appellee,
v.
GENERAL BUILDING CONTRACTOR, INC., a California corp., Plaintiff,
v.
SOUTHERN CALIFORNIA CONFERENCE OF CARPENTERS, a Labor
Organization, Defendant-Appellant.
 No. 90-55839.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 6, 1991.
Decided Aug. 27, 1991.
As Amended on Denial of Rehearing Dec. 18, 1991.
 
 Gordon K. Hubel, Los Angeles, Cal., for defendant-appellant.
 Kenneth J. Rose, Procopio, Cory, Hargreaves and Savitch, San Diego, Cal., for plaintiff-appellee.
 Appeal from the United States District Court for the Southern District of California.
 Before D.W. NELSON, O'SCANNLAIN and TROTT, Circuit Judges.
 ORDER AND AMENDED OPINION
 O'SCANNLAIN, Circuit Judge:
 
 
 1
 We must determine whether a union's contested attempt to extend a collective bargaining agreement's application beyond its delineated geographical territory is an arbitrable dispute.
 
 
 2
 * In 1986, Dennis L. Christensen General Building Contractor, Inc. ("Christensen"), signed a short form memorandum agreement with the Southern California Conference of Carpenters ("SCCC"). The SCCC is a consortium of various labor councils and unions. By signing the short form, Christensen bound itself to adhere to a master labor agreement negotiated by SCCC and a multi-employer bargaining association, United General Contractors, Inc. The short form incorporates by reference all terms and conditions of the master labor agreement, with some specified exclusions.
 
 
 3
 By virtue of the agreement, Christensen was permitted to employ union carpenters and thus obtain subcontractor jobs within certain Southern California counties. When Christensen signed the short form, neither the short form nor the master labor agreement were applicable in San Diego County. The preamble to the short form makes clear that no San Diego union was party to the agreement:
 
 
 4
 It is agreed between the undersigned, hereinafter called "Contractor", and the District Councils and Local Unions affiliated with the United Brotherhood of Carpenters and Joiners of America in the 11 Southern California Counties; namely, Los Angeles, Orange, San Bernardino, Riverside, Imperial, Ventura, Santa Barbara, San Luis Obispo, Kern, Inyo and Mono, hereinafter called the "Carpenters' Unions", in consideration of services performed and to be performed by Carpenters for the Contractors, as follows....
 
 
 5
 Similarly, the master labor agreement was then limited to:
 
 
 6
 the territory as described in this Paragraph, ... in the area known as Southern California and more particularly described as the Counties of Los Angeles, Inyo, Mono, Orange, Riverside, San Bernardino, Imperial, Ventura, Santa Barbara, San Luis Obispo, Kern and [certain named islands].
 
 
 7
 In fact, at the time it signed the short form, Christensen was signatory to a separate agreement, negotiated with a different labor union, that covered its San Diego operations.
 
 
 8
 The short form provided that modifications of the master labor agreement would bind both signatories to the short form. The short form's first paragraph following the preamble, Paragraph 1, follows:
 
 
 9
 1. The Contractor agrees to comply with all the terms ... as set forth in the Agreement referred to as the Master Labor Agreement ... dated October 1, 1986, and any renewals or subsequent Master Labor Agreements, ... and any amendments, modifications, extensions, supplementations and renewals of such Agreements ... and any agreements establishing other benefits or plans negotiated by the Carpenters' Unions and the Contractor Association signatory to such Master Labor Agreement.
 
 
 10
 In March 1989, the San Diego County District Council of Carpenters voted to affiliate with the SCCC. The SCCC and United General Contractors then agreed to amend the master labor agreement to cover San Diego County.[1] The amendment was to take effect on June 16, 1989, when the master agreement covering San Diego expired.
 
 
 11
 Christensen, however, had made plans of its own for its San Diego work. Christensen intended to operate as a nonunion shop after the expiration of the San Diego agreement.
 
 
 12
 Based upon Paragraph 1 of the short form (quoted above), the SCCC took the position that the amendment to the master labor agreement to include San Diego County was binding on all short form signatories. Although most signatory contractors accepted the change, Christensen did not, and has refused to abide by the terms of the master labor agreement in its San Diego contracts. The SCCC filed a grievance against Christensen pursuant to the arbitration provisions of the short form.
 
 
 13
 In October 1989, Christensen instituted this action for declaratory relief in federal district court.[2] The district court granted Christensen's motion for summary judgment in an order dated April 18, 1990. The court concluded that the arbitration provisions of the short form do not apply to this dispute and that the short form does not apply to work performed in San Diego County and cannot be modified to cover such work. The SCCC appeals.
 
 II
 
 14
 The short form that Christensen signed contains the following arbitration clause in Paragraph 5: "The Contractor and the Carpenters' Unions agree to submit all disputes concerning the interpretation or application of this Agreement and the Master Labor Agreement to arbitration under this Section...." The SCCC contends that this clause is sufficiently broad to mandate arbitration of the current dispute. Christensen counters that the clause does not apply to Christensen at all, and in any event could only be valid for disputes within the geographic jurisdiction contemplated by the parties.
 
 
 15
 * In its reply to the SCCC's opposition to Christensen's motion for summary judgment, Christensen for the first time suggested that the short form's relevant arbitration clause, Paragraph 5, did not apply to Christensen. Neither side introduced specific evidence on this point. The district court did not rule on the contention, since it concluded that Paragraph 5 could not apply to San Diego disputes in any event.
 
 
 16
 "[A] party should not be subjected to arbitration and excluded from court absent a prior judicial determination that the party has agreed to arbitration." Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., 925 F.2d 1136, 1145 (9th Cir.1991) (Hall, J., concurring and dissenting); see AT & T Technologies v. Communications Workers, 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986). We must determine whether Christensen has assented to submit disputes arising out of the applicable collective bargaining agreements to arbitration.
 
 
 17
 In the short form, the arbitration clause in Paragraph 5 is applicable to all contractors except those who give written notice to the union and to the administering trust that the contractor wishes to opt out of arbitration. The notice is required within thirty days of signing the short form. Those who opt out of the arbitration system set forth in Paragraph 5 are instead covered by Paragraph 6, which permits labor discord (strikes, lockouts, etc.) in lieu of arbitration.
 
 
 18
 Christensen does not allege that it sent the required notice to avoid Paragraph 5; instead, it simply asserts that SCCC bears the burden of proving that Paragraph 5 does apply. We cannot accept Christensen's contention. The contract indicates that Paragraph 5 will apply unless Christensen took some specific action. Before Christensen brought this suit, the parties proceeded with the grievance procedure pursuant to Paragraph 5.[3] Under these circumstances, and given the fact that Christensen did not raise the issue below until after SCCC had submitted all of its evidence in opposition to the motion for summary judgment, the SCCC has met its burden of establishing the arbitration clause's applicability to Christensen. If Christensen seriously wished to contest this issue, it should have presented the court with some evidence, such as a copy of the required notice, to rebut the evidence of the arbitration clause's applicability to Christensen.
 
 B
 
 19
 Christensen's main argument is that the entire short form agreement, including the arbitration provisions, has no application outside of the intended geographical boundaries of the agreement. The district court agreed. Looking at the parties' agreement as a whole, the court concluded that the relevant documents are "crystal-clear as to their geographic boundaries" and could not have been intended to extend to San Diego. We review decisions regarding the scope of an arbitration clause de novo. Three Valleys Mun. Water Dist., 925 F.2d at 1139.
 
 
 20
 In labor contracts with arbitration clauses, the presumption of arbitrability is very strong.
 
 
 21
 [W]here the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."
 
 
 22
 AT & T Technologies, 475 U.S. at 650, 106 S.Ct. at 1419 (quoting United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960)).
 
 
 23
 The presumption is particularly potent if the arbitration clause is broad. Westinghouse Hanford Co. v. Hanford Atomic Metal Trades Council, 940 F.2d 513, 517 (9th Cir.1991). Here, Christensen concedes that Paragraph 5, submitting to arbitration "all disputes concerning the interpretation or application of this Agreement and the Master Labor Agreement," is very broad. In such cases, only an express exclusion of a particular grievance or "the most forceful evidence of a purpose to exclude the claim" from arbitration will avoid referral of a dispute to arbitration. AT & T Technologies, 475 U.S. at 650, 106 S.Ct. at 1419 (quotation omitted); Westinghouse Hanford Co., 940 F.2d at 518 (quoting AT & T Technologies ).
 
 
 24
 In this dispute, the SCCC contends that the amendment of the master labor agreement to include San Diego was permitted by the short form's modification provision in Paragraph 1; Christensen disagrees. No provision of the short form removes disputes over the proper interpretation of the modification provision from arbitration's reach. Therefore, arbitration of this dispute would appear to be mandated. See Aluminum Co. of America v. International Union, United Auto., Aerospace & Agricultural Implement Workers, 630 F.2d 1340, 1343 (9th Cir.1980) ("A case is most clearly arbitrable ... when the union alleges a concrete violation of the agreement and interpretation or application of the agreement is required to resolve the dispute.").
 
 
 25
 Christensen cites the geographic coverage provisions of the short form and the master labor agreement, as well as the fact that Christensen had an entirely separate agreement with a San Diego union at the time it signed the short form, as compelling evidence that the agreements were never intended to extend to San Diego. Alas for Christensen, such evidence does not establish that disagreements in interpreting the modification provision of the master labor agreement were not to be arbitrated like any other "disputes concerning the interpretation or application" of that provision, even if the modification concerns the geographic limits of the agreement's coverage.[4]
 
 
 26
 In Haig Berberian, Inc. v. Cannery Warehousemen, 535 F.2d 496 (9th Cir.1976) (per curiam), the parties disagreed over whether a substantive term in the collective bargaining agreement, which applied the agreement to work performed "in companies' plants at Modesto," id. at 498 n. 2, permitted extension of the collective bargaining agreement to cover work at a new plant outside the Modesto city limits. The agreement contained a standard arbitration clause. Because one party claimed that the substantive provisions of the agreement could be interpreted to include employees at the new plant, and the other party disagreed, the dispute clearly arose out of interpretation of the agreement and required arbitration. Id. at 498-99. We stressed that we look only to the contract's arbitration clause, rather than to the substantive provisions of the agreement, to determine whether a dispute is arbitrable. Id. at 499; see also Westinghouse Hanford Co., 940 F.2d at 521 ("where there are no [express] exclusions from arbitration, we have limited our inquiry to the arbitration clause itself and refused to consider substantive provisions"). Evidence of the negotiation history bearing upon the interpretation of the substantive term was properly excluded; while "[e]vidence that the parties intended to exclude a particular type of claim from arbitration may be relevant and admissible," Haig Berberian, 535 F.2d at 499 (emphasis added), the proffered evidence bore only on the merits of the dispute and was a matter for the arbitrator, id. at 499-500. See also International Union, United Auto., Aerospace & Agricultural Implement Workers v. Western Publishing Co., 422 F.Supp. 583 (E.D.Wis.1976) (following Haig Berberian in holding arbitrable a union's attempt to grieve and arbitrate disputes arising in facilities that were expressly excluded from the union's jurisdiction in the collective bargaining agreement).
 
 
 27
 Christensen's arguments manifestly are focused upon the merits, rather than arbitrability, of the dispute. Christensen may well be correct that the parties never intended the short form agreement to have any application in San Diego, and that they intended the modification clause to permit only changes necessary to preserve work opportunities for employees and individual employers covered. Nonetheless, under a broad arbitration clause, these are matters for the arbitrator to decide. See United Steelworkers v. American Mfg. Co., 363 U.S. 564, 566-67, 80 S.Ct. 1343, 1345-46, 4 L.Ed.2d 1403 (1960) (where agreement calls for disputes to be arbitrated, then arbitration of even unmeritorious claims is required); see also AT & T Technologies, 475 U.S. at 649, 106 S.Ct. at 1418-19 ("[I]n deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims."); Westinghouse Hanford Co., 940 F.2d at 519 ("To the extent that Westinghouse is asking us to adopt its reading" that the relevant contract term does not apply to the sort of grievances at issue, "it [Westinghouse] is seeking a court determination of the merits of the grievance.").
 
 
 28
 We recognize that there is a certain logic to the contention that if the relevant agreement was not intended to apply to San Diego, then the arbitration clause also has no force for "San Diego disputes." The controversy between SCCC and Christensen, however, is best characterized by its nature, rather than by reference to geography. The parties disagree whether their agreement may be modified to include a new territory. To resolve this matter, one must interpret the scope of the master labor agreement's modification provision. The parties have committed the resolution of "all disputes" arising under the agreements to arbitration. We must respect that decision.
 
 III
 
 29
 The district court incorrectly focused upon the merits of the parties' disagreement, rather than upon the scope of the arbitration clause itself. The grant of summary judgment to Christensen is reversed, and the case is remanded.
 
 
 30
 REVERSED and REMANDED.
 
 
 
 [1]
 Under the terms of the master labor agreement, a committee composed of three union and three management representatives was set up to "review requests for changes in the terms and conditions of the Agreement that may be necessary to preserve work opportunities for employees and individual employers covered by the Agreement." The committee was authorized to implement changes "as it deems to be in the best interest of the parties to the Agreement."
 
 
 [2]
 The arbitration hearing was stayed pending the resolution of this action
 
 
 [3]
 The court's record includes a letter to Christensen from Mitchell Weiss of the Independent Contractors Grievance and Arbitration Trust Fund, dated August 15, 1989, which indicates that grievance procedures would be followed "[p]ursuant to Paragraph 5." Evidently, the administering trust did not receive any notice of Christensen's desire to avoid Paragraph 5
 
 
 [4]
 Obviously, all proposed modifications of contract terms will be inconsistent with preexisting terms, and often will not have been contemplated specifically by the contract's signatories. However, we recognize Christensen's argument to be that modifications of the contract's territorial reach are different in kind from other such modifications